(Surrogate's Court, Schenectady County.   November, 1899.)

ILLEGITIMATES—DOMESTIC RELATIONS LAW—CONSTRUCTION.

The domestic relations law (Laws 1896, c. 272, § 18) legitimatizing illegitimate children whose parents afterwards marry, and entitling them to all the rights of legitimates, does not, because it protects against the divestment of all estate or interest vested at the time of the marriage of an illegitimate's parents, devest all estate or interests which have vested since such marriage; and if it did it would be void under Const. art. 1, § 6, declaring that no person shall be deprived of his property without due process of law.

In the matter of the estate of Harriet S. Barringer.   Application by Clarence H. Barringer to compel Jacob Barringer and another, administrators, to file an inventory.   The issue raised by the answer is submitted on a stipulation of admitted facts.   Application denied.

By the stipulation it was admitted that Clarence H. Barringer, the petitioner, was the illegitimate son of Howard Barringer and a woman whose name does not appear, and was born in January, 1874.   After his birth his parents married, and his father died at Schenectady. N. Y., in September, 1875; and Harriet S. Barringer, who was Howard's mother, died intestate at Schenectady about June, 1891, leaving her sons, Theodore R., Jacob, and the petitioner, surviving her.   Both parties assumed, without formally stating it in the submitted facts, that the two sons, Theodore R. and Jacob, and the petitioner, if one of the next of kin, are and were the only next of kin of Harriet S. Barringer at the time of her death.   It was also admitted that Theodore R. and Jacob Barringer were duly appointed administrators of their mother's estate on July 2, 1891, duly qualified and acted as such, and, after settling all debts against the estate, divided the assets in 1892, each taking and giving to the other full receipts and acquittances for their respective half interests, without formal accounting or decree in the surrogate's court.

Alex. J. Thomson, for petitioner.
Edwin C. Angle, for administrators.

STRONG, S.   Upon this state of facts, it is claimed by counsel for the petitioner that, under the several acts passed in this state legitimatizing illegitimate children of parents who have subsequently married, the petitioner, Clarence H. Barringer is now one of the next of kin of his grandmother Harriet S. Barringer, deceased; that as such next of kin he is now entitled to a distributive share in her personal estate; and that therefore his status to maintain this proceeding as one of the persons interested in that estate is established. The first act in this state making legitimate the illegitimate children of parents who married after the birth of such illegitimate children was chapter 531, Laws 1895, which act legitimatized all illegitimate children whose parents had before that time or might thereafter intermarry.   This act provided that vested interests or estates should not be devested or affected by that act.   It continued in force until it was repealed by the domestic relations law (chapter 272, Laws 1896), section 18 of which declared that:

"An illegitimate child whose parents have heretofore intermarried, or shall hereafter intermarry, shall thereby become legitimate and shall be considered legitimate for all purposes, entitled to all the rights and privileges of a legitimate child; but an estate or interest vested before the marriage of the parents

of such child shall not be divested or affected by reason of such child being legitimatized."

Section 18 of the domestic relations law was amended by chapter 725, Laws 1899; the amendment protecting trusts created at the time of the remarriage, as well as estates or interests then vested.

It will be noticed that the petitioner, notwithstanding these several acts of legitimation, was illegitimate until the passage of the act of 1895, which went into effect May 3d of that year (chapter 531, Laws 1895), and was therefore illegitimate when his grandmother died, in 1891. As the illegitimate son of the intestate's deceased son Howard, the petitioner was at the time of the intestate's death nullius filius, and incapable of inheritance through his deceased father of any real estate coming from the father or from any of the latter's ancestors (1 Rev. St. p. 754, § 19), and was equally incapable of taking any distributive part of his grandmother's personal estate, as he, being illegitimate, did not legally represent his deceased father (Code Civ. Proc. § 2732, subd. 4). Clarence Barringer, then, was not one of the next of kin of the intestate at the time of her death, in 1891. Theodore R. Barringer and Jacob Barringer were then the only next of kin. As such, they had the legal right to have distributed to them in equal portions the surplus of their mother's estate after payment of debts. Code Civ. Proc. § 2732. The right of a next of kin to a share in his intestate's personal estate is a vested right,—vesting at the time of the death of the intestate,—and goes, in case of the next of kin's personal representatives, the same as other personalty belonging to him. Rose v. Clark, 8 Paige, 578. That after the intestate's death, and before actual distribution of the personal estate, the next of kin have the power to alienate the right to a distributive share, so that between such assignor and assignee the title to such distribution passed, has never been doubted, so far as I am aware. The right, then, which vested in Theodore R. Barringer and Jacob Barringer, at their mother's death, to have her personal estate distributed between them as her sole next of kin, was property, in the fullest sense of the term. It is true, as petitioner claims, that prior to the distribution of an intestate's estate the legal title to the assets composing it is in the administrators, and not in the next of kin. The latter's estate or interest is a chose in action (Westervelt v. Gregg, 12 N. Y. 202–206), as is a promissory note, and is property in the same sense as any other intangible property or right is property. When, in July, 1891, the administrators of Harriet S. Barringer, having paid all her debts, divided up her estate between themselves as her next of kin, they became the owners in their individual rights of the several securities or other assets which at that time constituted the decedent's estate, and the right which since her death they had possessed (the right to such distribution) became consummated or was executed by the actual transfer and division of the property. From the death of Mrs. Barringer, in 1891, until the passage of the first legitimatizing act, in 1895, Theodore R. and Jacob Barringer were each the owners and possessors of the right to have the surplus of their mother's estate distributed between them, or of the assets which made up that surplus. Both the right to a distribution and the property transferred

to them was their property. They continued in the enjoyment of this property, as petitioner's counsel admits, until the passage of the domestic relations law, in 1896, which went into effect on October 1st of that year. Section 18 of this act is as follows:

"An illegitimate child whose parents have heretofore intermarried, or shall hereafter intermarry, shall thereby become legitimatized and shall be considered legitimate for all purposes, entitled to all the rights and privileges of a legitimate child; but an estate or interest vested before the marriage of the parents of such child shall not be divested by reason of such child being legitimatized."

The claim made on behalf of the petitioner is that this act, because it protects against divestment of all estate or interest vested at the time of the marriage of the illegitimate's parents, is to be construed as devesting all estate or interests which have vested since such marriage, and that as petitioner's parents were married some time in 1874 or 1875, while the interest or property in their mother's estate did not vest in Theodore R. and Jacob until her death, in 1891, or until the actual division of her estate, in 1892, the act of 1896 worked a divestment of those interests to the extent of a one-third part thereof. If this proposition were well founded, the act in question would be of a most radical and revolutionary character, and would unsettle all estates which had been held and enjoyed, no matter for what length of time, by legitimate heirs at law to the exclusion of illegitimates, in all cases in which the parents of such illegitimates have or may hereafter intermarry. The statute is not susceptible of such a construction, and, if it could be so construed, would be void, as unconstitutional. The act of 1895 and that of 1896 are retroactive, so far as they change the statute of illegitimates born before the acts in question went into effect. But while all such previous illegitimates are from May 3, 1895, to be regarded as legitimates, with full capacity to take by descent or under the statute of distributions, the legislature did not intend by such legitimation to devest interests vested before the act of 1895, or during the illegitimacy of any child who may be under either of the acts restored by them to a state of legitimacy. Both the act of 1895 and that of 1896 contain clauses which, in terms, purport to save interests vested in the one case at the passage of the act, and in the other at the time of the intermarriage of the illegitimate's parents. What, if any, force or effect those clauses, or either of them, may have in case of any interest vested before their passage, it is not important now to consider. The fact that interests vesting at a certain time are within the saving proviso does not by any means warrant the conclusion which counsel for the petitioner draws, that all other vested interests are destroyed or modified by the statutes in question. The statute of 1896 is either not to be construed as is claimed by petitioner's counsel, or is void if it be so construed. The fundamental law of the state (Const. art. 1, § 6) declares that "no person shall be * * * deprived of * * * property without due process of law." As we have already seen, the right vested in 1891 in Theodore R. and Jacob Barringer, as next of kin of their mother, to have the surplus of her estate distributed between them, was property. The assets transferred to them respectively in execution

or consummation of this right to a distribution were their property when so transferred in 1892. If either the act of 1895 or that of 1896 destroyed or took away from them this property, it was violative of the constitutional provision above quoted, as it will not be contended that a statute of confiscation is "due process of law." The case in hand falls directly within the principle established in Westervelt v. Gregg, 12 N. Y. 202, in which the validity of the married woman's act of 1848 came up for final determination by the court of last resort. The married woman's act of 1848 (chapter 200, Laws 1848), in the second section enacted, that:

"The real and personal property * * * of any female now [at the time of the act] married shall not be subject to the disposal of her husband; but shall be her sole and separate property as if she were a single female," etc.

Until this act, a husband was entitled to his wife's personal property by virtue of his marital relation; his title being absolute and complete to so much of his wife's property as he reduced to his possession, but, as to property not so reduced to possession, consisting of the right to reduce it to his possession, and so to his individual and absolute ownership. The act of 1848, by its terms, attempted to deprive all husbands then living of this right to reduce to their possession the property of their wives. In the case cited it was held that the husband's right to so reduce to his possession the property of his wife was "property," within the meaning of the provision of the constitution above referred to, and that to that extent the act of 1848 was void. The same principle was reiterated in Ryder v. Hulse, 24 N. Y. 372, and has been approved and followed in numerous other cases. These authorities are decisive of the petitioner's contention, if authorities to negative it can be considered necessary. An order will be entered, denying the application, with costs.

Application denied, with costs.