In the Matter of the Accounting of Ben H. Brown, as Ancillary Administrator of the Estate of Ike Menschefrend, Deceased, Respondent. Nathaniel L. Goldstein, as Attorney-General of the State of New York, Appellant.

First Department, March 16, 1954.

*Daniel M. Cohen* of counsel (*Flavius N. Costerella* with him on the brief; *Wendell P. Brown* and *Nathaniel L. Goldstein, Attorney-General*), for appellant.

*Theodore Garris* for respondent.

BASTOW, J.  On July 9, 1949, Ike Menschefrend died intestate in California, where he had continuously resided for fourteen years.  Up to the present time, despite diligent search, no trace has been found of any heirs at law or next of kin.

In September, 1949, the Public Administrator of Los Angeles County, California, was appointed domiciliary administrator in California.  There were located in that State $4,500 in cash, some United States Savings Bonds and a savings account.  It was also discovered that there were three bank accounts in New York City with deposits totaling $9,565.24.  They had been inactive for almost fifteen years.  In September, 1950, the domiciliary administrator was appointed ancillary administrator by the Surrogate of New York County.  Shortly thereafter the proceeds of the bank accounts were paid by the banks to said ancillary administrator.

No creditors having appeared after due advertisement, the ancillary administrator petitioned for judicial settlement of his account and asked for payment of the ancillary estate, less

counsel fees, to himself as domiciliary administrator. The estate had been declared exempt from New York estate tax.

The Attorney-General of the State of New York, having been cited, objected to payment to the domiciliary administrator. He claimed that the local estate should be paid to the Comptroller of the State of New York as abandoned property. The Surrogate overruled the Attorney-General's claim and directed the payment of the money to the domiciliary administrator. It was held that the bank accounts were not abandoned property within our statutes, having been paid to the administrator who was the person entitled to receive them, and also that there could be no inference that the property would escheat because of the lack of present knowledge as to distributees. The Attorney-General has appealed to this court.

The account filed by the ancillary administrator says that there are no debts, but this may refer to non-existent New York creditors. It would appear from the present record, and for the purposes of this appeal we assume it to be the fact, that the portion of the estate in California is sufficient to pay all claims, funeral and administration expenses, and that the money in New York is not needed in California for the purpose of meeting these obligations. We find no claim that any tax problem is presented.

Referring briefly to the common law of escheat, we find that in England it was an incident of tenure and thus provided for a reversion of escheated property to the lord of the manor. In this country, where there is no recognition of feudal tenure, it is generally held to be an incident of sovereignty (*Matter of People [Melrose Ave.]*, 234 N. Y. 48). Escheat is not a matter of succession of estates. It is said to be an obstruction in the course of descent (30 C. J. S., Escheat, § 1). While personal property does not escheat in the original sense of the word, the doctrine of escheat has been applied to personalty in New York under the common law. Thus, in *Johnston* v. *Spicer* (107 N. Y. 185), in discussing the history of the common law and earlier statutes with respect to escheat, the court said (p. 201): " With reference to the personal estate of persons dying intestate without next of kin, it appears to have been the uniform practice of the State since its organization to take such property, and hold it either for the benefit of the community at large or some division of the State, or to be returned to such persons as may from considerations of natural justice and equity seem to the legislature to be entitled thereto."

The public policy of this State to seize as abandoned property money found here under the present circumstances is fully disclosed by the Abandoned Property Law (L. 1943, ch. 697, as amd.). This law declares it to be the policy of the State, while protecting the interest of the owners thereof, to utilize escheated lands and unclaimed property for the benefit of all the people of the State (§ 102). It provides for a reversion of title of lands, which fail from a defect of heirs, to the People (§ 200). The statute relating to legacies or distribution shares of an estate to which an unknown person is entitled and which is deemed abandoned property is treated in less drastic manner. Possession thereof is seized by the State and it is held subject to any claim made therefor. (Abandoned Property Law, § 600, subd. 1, par. [b]; § 1406, subd. 3.) Absent a claimant, however, the fund eventually reverts to the State (State Finance Law, § 95).

While the general revision of the Abandoned Property Law in 1943 made fundamental changes in New York's law of escheat as to certain classes of personalty, we find no evidence of an intention express or implied to surrender any of the rights of the sovereign under the common law as to properties that would pass to the State. The purpose was to expand the field of escheat and to change the policy of the State from confiscation to custodial protection. The scope of the statute is not indicative of any intention to abandon rights to any property that the sovereign would otherwise take.

We turn to the contention of the Attorney-General that the proceeds of the three bank accounts now in the hands of the ancillary administrator should be paid to the State Comptroller as abandoned property. Section 300 provides that bank deposits unclaimed for fifteen years shall be deemed abandoned property. Such a deposit, however, ceases to be abandoned property when the right to receive the same is established to the satisfaction of the banking organization. While the New York bank accounts had been inactive for about fifteen years, we agree with the ruling of the Surrogate that this portion of the statute has no applicability as the payment by the banks to the ancillary administrator indicated that his right to receive the deposits was established to their satisfaction.

Section 600 of the Abandoned Property Law provides: "1. The following unclaimed property shall be deemed abandoned property: * * * (b) Any legacy or distribution share to which an unknown person is entitled, as specified in section two hundred seventy-two of the surrogate's court act."

Section 272 of the Surrogate's Court Act is entitled " *Legacy to unknown person to be paid to the comptroller* " and reads, so far as presently applicable: " Where the person entitled to a legacy or distributive share is unknown, the decree must direct the executor, administrator, guardian or testamentary trustee to pay the amount thereof to the comptroller of the state, for the benefit of the person or persons who may thereafter appear to be entitled ".

The Surrogate held that these sections had no application, since the person entitled to the funds was not unknown, but was the domiciliary administrator appointed by the proper court of California. This, it seems to us, avoids the question as to whether transmittal was proper.

The person entitled to a legacy or distributive share within the purview of the statute means one entitled to succeed to the estate of the decedent, not one who is entitled to administer the estate.

Section 600 refers to a legacy or distribution share, and section 272 refers to a " person " entitled to a legacy or distributive share under a decree on accounting. Despite these uses of the singular case in each statute, we think that it is a reasonable construction thereof to find they intended to include the entire estate of one dying without known heirs. Furthermore, an ancillary administrator is included within the term " administrator " as used in section 272 aforesaid. If the intestate herein had been a New York domiciliary, we would conclude that his estate here would constitute abandoned property under the law. There is no logical basis for a different holding in this case. We find, therefore, that the statute embraces the funds presently in the hands of the ancillary administrator, and they should be paid to the Comptroller, unless our law of distribution of estates requires that the moneys be remitted to the domiciliary administrator.

In the ordinary case of an estate passing by succession to known next of kin there is no doubt that under our laws the ancillary estate would be transmitted to the domiciliary State for distribution according to its laws. Section 164 of the Surrogate's Court Act so provides. But we have a situation out of the ordinary here. More than four years have elapsed since the death of the intestate, and despite diligent search no known heirs or next of kin have been discovered. There is property in the State of domicile sufficient to meet the needs of administration. It is reasonable to expect that the net proceeds after administration will escheat. Do New York's laws of distribution

require us to send New York funds to the domiciliary State under such circumstances? We think not, especially if the law of escheat recognizes a local situs for these New York funds rather than a situs of domicile as in the case of ordinary intestate succession.

Escheat at least as to real property, occurs as of the date of death of the owner without heirs (*Matter of People* [*Melrose Ave.*], 234 N. Y. 48, *supra*). We think that the same rule should apply to personalty, though the State permits the administration of an estate which may escheat for the purpose of payment of creditors, and for like purposes. The common law as to escheat is not controlled by the law of domicile or situs of personal property as applied in other situations. We recognize that the law of the domicile generally prevails in this State as to movables in a case relating to the transfer of estates by succession. Where there is escheat no succession of estates is involved. The property, being left without an owner, is property at large or *bona vacantia*. As such, it is deemed property of the sovereign, where found. That sovereign recognizes no situs but its own, and lays claim to such property.

Title to movables on death in intestacy passes as a matter of statute in this country to the Surrogate's Court and through it to the administrator. This is accomplished by the law of the situs of the property. The law of situs may provide for application of the law of the domicile as to distribution and descent; but, as the law of the situs is supreme, it will not apply the law of the domicile, if to do so would bring about a result contrary to the public policy of the State of situs. (2 Beale, on Conflict of Laws, § 300.1, *et seq.*)

While the present problem does not appear to have been previously decided by any appellate court in this State, there was a decision by Surrogate BRADFORD in 1850 which upheld the rule that movables of an intestate accrue to the State within whose territory they are found subject only to the law of distribution, and the ordinary rule of domiciliary distribution is not applied where there are no claimants (*Public Administrator* v. *Hughes*, 1 Bradf. 125).

In the leading English case of *Matter of Barnett* ([1902], 1 Ch. 847) certain principles as to property *bona vacantia* were enunciated. There it was said that in the absence of any person who is entitled to take by succession the chattels of an intestate and the proceeds of claims owned by him pass to the State in which they are found. The right to take what belonged to no one appertained to the crown as *jura regalia* and there is no " distri-

bution '' to be controlled by the law of domicile. The decision pointed out that a foreign administrator, coming into the place where the property of the escheat is located, does not represent the deceased or claim the property through him. The holding was, in effect, that the decedent made his domicile immaterial by dying heirless.

While that case was decided under private international law, there is nothing in our common law, or under the rules of comity recognized between States, which makes its holding inapplicable. The States of the United States are given plenary power with respect to the laws of descent and distribution as to property within their borders (*Irving Trust Co.* v. *Day,* 314 U. S. 556). Each State has the right to determine under what circumstances money found within its borders shall be deemed property at large. It has been so held with respect to deposits in banks (*Anderson Nat. Bank* v. *Luckett,* 321 U. S. 233), and with respect to proceeds of insurance policies under New York's Abandoned Property Law (*Connecticut Ins. Co.* v. *Moore,* 333 U. S. 541).

There have been similar questions presented to courts of other States with conflicting results. Thus, in *Matter of Lyons* (175 Wash. 115), which was relied on by the Surrogate below, the Supreme Court of Washington held that where an Alaskan resident died intestate leaving a bank account in Washington, the decedent's domicile controlled the situs of the property, and it was not subject to Washington's escheat laws. That decision, however, has met with some criticism in Beale on Conflict of Laws (Vol. 2, § 309.1), where it is said: '' The escheat of chattels, or more accurately the seizure of the chattels to the state as *bona vacantia,* is not a matter of succession on death. It is rather a right to confiscate property to which there is no other claimant. The state of situs refers this to the law of no other state; it seizes its own. A more difficult question arises when the movables left vacant are intangible, like a bank deposit in one state of a person domiciled in another. It has been held in such a case that after the deposit has been collected by an ancillary administrator it should not go to the state where the deposit was, on the ground that intangibles have a situs at the domicil of the owner. In re Lyons' Estate, 175 Wash. 115, 26 P. (2d) 615 (1933). A different result might, it seems, be reached. As applied to this case, the result might almost be said to be based upon a fiction. The picture of *bona vacantia* is that of movables without an owner being taken by the officers of the state. In reality, the money which represented by the

bank deposit was where the bank was when it was proved to be without an owner.''

A second decision, but one in accord with our present holding, is *Matter of Rapoport* (317 Mich. 291). There California laid claim to bank accounts, stocks and bonds found in Michigan belonging to a deceased California domiciliary. After a careful review of the Michigan statutes of escheat and its distribution statutes, the Michigan court held that an ancillary administrator should not be compelled to deliver such property to the California administrator of the deceased. It was found that the former Michigan common law of situs of domicile had been altered by statute.

It must be understood that our decision does not affect the ordinary case of ancillary administration on the estate of a nonresident decedent with known kin. However, the statute (Surrogate's Ct. Act, § 164) governing ancillary administration is inapplicable to a situation where no property of a decedent passes by succession, but escheats to the State where found in the absence of heirs.

Based upon our assumption that there is sufficient money in California to meet all claims of creditors and administration expenses, we hold that the New York funds should be paid to the Comptroller as abandoned property pursuant to section 600 of the Abandoned Property Law. If the petitioner claims that there are not sufficient funds in California for the purposes indicated, or that there is any tax problem involved, he may apply to the Surrogate to whom this matter is remitted for further proceedings. The Surrogate may make such order as he deems appropriate not inconsistent with this opinion.

Decree appealed from reversed and matter remitted to the Surrogate's Court.

PECK, P. J., CALLAHAN, BOTEIN and BERGAN, JJ., concur.

Decree unanimously reversed and the proceeding remitted to the Surrogate of the County of New York for further action in accordance with the opinion of this court.