S. Samuel Di Falco, S.
The Government of British Honduras, appearing specially, petitioned this court for permission to appear specially in the contested probate proceeding for the purpose of taking appropriate steps to assert its rights in that proceeding. It alleges that the decedent was domiciled in British Honduras at the time of death, and that the Government has been cited as a party to the probate proceeding in British Honduras “as an interested party on the ground that if the decedent were found to have died intestate, then his estate would belong to the Crown as bona vacantia (abandoned property) ”. The Government of British Honduras asserts that it has the right to intervene in the probate proceeding in New York because, under the law of the decedent’s domicile, all of the decedent’s property would, in the event of intestacy, vest in the Crown as statutory distributee and heir.
The petitioner has in effect been granted the right to appear specially and to move to assert its rights, because, the other parties to the proceedings having challenged the facts upon which the petition rested, the court placed the matter on its calendar for hearing. The Government of British Honduras appeared and was given full opportunity to present its claim of interest in this estate.
The claim of status is based upon Ordinance No. 34, Year 1953, Ordinances of British Honduras. That ordinance deals with the administration of estates of deceased persons, and it prescribes “ rules for the distribution of the residuary estate amongst the next of kin of intestates.” Part V of the ordinance relates to the distribution of estates in intestacy. In separate subdivisions of subsection 1 of section 53, the intestate distributees are listed, with the familiar provisions for distribution to surviving spouse, descendants, ascendants or collateral relatives of the blood. Subdivisions (a) to (i) relate to these distributees *571 within the family bond. Subdivision (]") reads: “in default of any persons taking an absolute interest under the foregoing provisions, the residuary estate of the intestate shall belong to the Crown as bona vacantia, and in lieu of any right to escheat, and the Crown may, out of the whole or any part of the property devolving on it, provide, in accordance with the existing practice, for dependents, whether kindred or not, of the intestate, and other persons for whom the intestate might reasonably have been expected to make provision.”
In Matter of Menschefrend (283 App. Div. 463), the court held that where there is an escheat of personal property having its situs in the State of New York, the property belongs to the State of New York and will not be forwarded to the domicile of the decedent for the purpose of allowing the government of the domicile to expropriate it. Said the court (p. 467): “ The common law as to escheat is not controlled by the law of domicile or situs of personal property as applied in other situations. We recognize that the law of the domicile generally prevails in this State as to movables in a case relating to the transfer of estates by succession. Where there is escheat no succession of estates is involved. The property, being left without an owner, is property at large or bona vacantia. As such, it is deemed property of the sovereign, where found. That sovereign recognizes no situs but its own, and lays claim to such property.”
The rule thus declared by our court is not peculiar to the State of New York, but is a generally recognized rule. The English courts apply the same rule. In England, however, a distinction has been made between statutes of a foreign government which provide for a right of succession to the property and those which provide for the paramount right of the foreign government to take property of its nationals which has become ownerless on their deaths. (7 Halsbury’s Laws of England [3d ed.], p. 56.) The leading case in England is Estate of Maldonado, State of Spain v. Treasury Solicitor ([1954] Prob. 223; [1953] 2 All E. R. 300; Id, 1579 0. A.) In that case the State of Spain brought proceedings in England for the issuance of letters of administration of the goods of a deceased Spanish national to the duly constituted attorney of the Spanish State. It claimed that under the Spanish Civil Code, it was the sole and universal heir to the estate. After trial, the finding of the court was ‘ ‘ that the State of Spain is a true heir just as any individual heir according to Spanish law.’’ ([1954] Prob. p. 231.) That finding of fact was not challenged on appeal (id, pp. 233, 240, 247, 250) and hence the status of the Spanish State as true heir was never questioned. While the Judges on appeal recognized the fine line *572 of distinction between succession by a sovereign State and appropriation of bona vacantia by a foreign State (pp. 248, 251), they were satisfied that the distinction was real and that there was no reason of policy or principle that would prevent the English courts from recognizing the State of Spain as the true heir.
The Government of British Honduras claims that its ordinance is basically the same as the Spanish statute which was construed in the cited case, and that like Spain, it becomes under its own law the true heir of the decedent. For the purpose of this application the court is assuming as true the fundamental facts asserted by the petitioner. It assumes that the decedent was domiciled in Honduras and that no person exists with any right of succession prior to that of the Government. These questions may be controverted in the probate proceeding, but the court is assuming them to be resolved in favor of the Government of British Honduras only in connection with the present application. The claim of the Government that it takes as heir, however, is one that is disputed in this proceeding. On that issue, the Honduras Government called as its expert witness the Attorney General of British Honduras, who is a member of the Bar in that jurisdiction and is also a member of the Executive Council and of the Legislative Council. He was unfortunately in the position of being both an advocate in behalf of the Government which he represents and an expert witness. It was explained that the relatively few practicing lawyers in that country were all somewhat involved in the prohate proceeding there, and that, therefore, the Attorney General was necessarily called as expert witness.
There is no definitive decision in British Honduras which construes the ordinance in the way which the Attorney General suggests. His opinion that the Honduras Ordinance is similar in effect to the provision of the Spanish Civil Code is his own interpretation of the statute. He testified: “It is based upon my interpretation, first of all, of the Administration of Estates Ordinance; secondly, it is based on the case of In re Mitchell * * * 1954, 2 All England Reports.” (Minutes, p. 23.) He testified also that the English cases such as Estate of Mitchell Halton v. Jones ([1954] Ch. 525) (and presumably the other English cases cited herein), are followed by the Supreme Court of British Honduras.
The Ordinance of British Honduras is strikingly similar to Section 46, subdivision 1, subsection (vi) of the English Administration of Estates Act, 1925 (15 Geo. V, ch. 23). The text, with necessary differences for the two different Governments, is almost identical. Both use the words “ shall belong to the *573 Crown ” and the words “ as bona vacantia, and in lieu of any right to escheat”. Both contain almost identical language empowering the Government to make disposition of the property. Indeed, the Attorney General stated that the two statutes were substantially the same.
While the Attorney General expresses the opinion that the Honduras Ordinance and the British Act are substantially the same as the Spanish statute, it is significant that the opinion in England does not support that view. In the Maldonado case (supra) Barnard, J. had this to say: “In England, the property belongs to the Crown as bona vacantia, and since the Administration of Estates Act, 1925, § 46 (4), in lieu of any right to escheat. The appearance of the Crown, as ultimately entitled to property, in a statute regulating the distribution of an intestate’s estate, did not alter the capacity in which the Crown took such property. This was made clear by the decision of the Court of Appeal In the Estate of Hanley, [(1942) P. 33; (1941) 3 All. E. It. 301] which held that the Crown, under section 46, was not a person entitled upon an intestacy” (p. 232). Moreover, on appeal the entire discussion of the various Judges proceeded on the basis of the difference between the English Act and the Spanish Act. All of the Judges quoted with approval text writers and authorities who drew the distinction between the two lines of cases and who placed the English rule as based upon the paramount authority of the State over ownerless property. Lord Justice Morris quoted with approval the decision in Matter of Barnett’s Trusts ([1902] 1 Ch. 847) saying: “The result [under the Austrian Code] was that it became liable under the code to be confiscated as ownerless. The provision to this effect was held by Kekewich, J., to be precisely on the lines of the English law as to bona vacantia. As Kekewich, J., expressed it: ‘ When there is no heir, some paramount authority steps in and claims it, not as against anyone, but because there is no one to claim it at all. ’ ’ ’
The distinguished witness for the petitioner recognizes the views of these eminent Judges, but he regards them as dicta. His principal reliance is on Estate of Mitchell Halton v. Jones ([1954] Ch. 526; 2 All E. R. 246, supra). There the testator created a trust for the benefit of his wife, gave her power to appoint the fund, and in default of or subject to any such appointment, directed it to be held “ in trust for such person or persons who would have been entitled thereto under Part IV of the Administration of Estates Act, 1925, at the death of my said wife had she died possessed hereof intestate without having been married such persons to take (and if more than one) in the *574 shares and manner in which they would have taken under the said part of the said Act.” The wife died intestate, without exercising the power. She was illegitimate and it appeared that there was no person other than the Crown who would he entitled to the residue. The question as to the person entitled to the residue was between the next of kin of the husband, on one hand, and the Crown on the other hand. The court held that the text of the will clearly disclosed the intention that the residue was to be distributed among the persons who would have been entitled “ if the relevant provisions of section 46 of the Administration of Estates Act, 1925, had been written out in full in the will” ([1954] Ch., p. 528). It was conceded that the Crown was a “ person ” as that term is used in section 46, but it was argued that the Crown did not take under the section but by its prerogative right to bona vacantia where there is no owner. The court, referring to the .text of section 46, said: “ Those last words ‘ as bona vacantia ’ appear to me to be merely descriptive and fit in with the scheme of the subsection, which is only to bring the Crown in at the very end of what I have described as a complete and exhaustive code.” The court pointed out that the 1925 Act bound the Crown explicitly. It held that the Crown “ takes directly under the statutory provision in section 46 (1) (vi), and not by any prerogative right under which, but for the statute to which the Crown submits, it would otherwise have taken ” (p. 529).
The learned Judge of the Chancery Division could not have intended to disagree with the long line of English authority who had characterized the English statute up to that time. In holding that the statute had been incorporated into the will and that the Crown was entitled to take under the statute, his decision was undoubtedly sound. In holding that the Crown took under the statute and not by any prerogative right which it would have if there had been no such statute, the decision cannot be challenged. It seems to this court that this was as far as the learned Judge intended to go. He would hardly have ventured to overturn what would appear to be settled law, without even a slight reference to it.
The court, therefore, holds that the Government of British Honduras takes the property of one of its intestate nationals “ as bona vacantia ”, using the words of its own ordinance, and not as direct sole heir. Under the English authorities, as well as our own, its right to take ownerless property of its nationals does not entitle it to take property within the State of New York. As bona vacantia, the property is deemed property of the sovereign where it is found. (Matter of Menschefrend, supra.) The *575 Government of British Honduras has, therefore, no right to intervene in the probate proceeding as a person entitled to succeed to the property of the decedent in the event of intestacy. Insofar as the application seeks permission to intervene in the probate proceeding as an interested party, the application is denied. Insofar as it seeks permission to appear specially to move to assert its rights, its motion has in effect been granted, it has asserted its right as an heir and distributee of the decedent, and this court has ruled thereon. The petitioner asks for no other relief.
Submit order on notice accordingly.