In the Matter of the Accounting of BENJAMIN NASSAU, as Administrator C. T. A. of MALVINA S. UTASSI, Deceased, Respondent.

In the Matter of the Accounting of BENJAMIN NASSAU, as Ancillary Administrator of the Estate of ETELKA UTASSI, Deceased, Respondent.

LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Appellant; ESTATE OFFICE OF THE CITY OF LUCERNE, SWITZERLAND, Respondent.

First Department, February 4, 1964.

*Daniel M. Cohen* of counsel (*Paxton Blair* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellant.

*Louis Hayner Kurrelmeyer* of counsel (*Charles Angulo* and *Lawrence S. Lesser,* attorneys), for respondents.

*Per Curiam.* We affirm the order appealed from upon the opinion of the Surrogate. We would like to note, however, that neither of the cases principally relied upon by the objectant indicates that the Swiss statute must be denied extraterritorial effect. The question here posed was not presented in either *Matter of Menschefrend* (283 App. Div. 463, affd. 8 N Y 2d 1093) or *Matter of Turton* (20 Misc 2d 569, affd. 9 A D 2d 759, revd. on other grounds 8 N Y 2d 311). In the former case there was no contention that California would take as an "heir". Its right to the property rested only upon an escheat. In *Matter of Turton,* while British Honduras claimed a right to take as an "heir", the Surrogate found as a fact (which finding we affirmed) that its law did not so provide. The "ordinance" relied upon was merely one of escheat. In this action we are obliged to find on the presentation made that the Swiss law does make the canton the "heir" as distinguished from escheat. In the absence of controlling authority to the contrary we follow the Surrogate in adopting the view of the English courts as expressed in *Matter of Maldonado* ([1954] 2 Week. L. R. 64; 2 All E. R. 300) giving extraterritorial effect to such foreign law.

Accordingly, the order should be affirmed, without costs.

STEUER, J. (dissenting in part). In 1935, Malvina Utassi died leaving a will. The sole beneficiary under the will was her sister Etelka. Malvina was a resident of New York County and the property disposed of by her will was located here. Etelka was a resident of Lucerne, Switzerland. Benjamin Nassau was appointed administrator, *c. t. a.,* of Malvina's will and, as such, took possession of the property. For some reason not appearing in the record administration of the estate had not been completed by 1944 when Etelka died in Lucerne. Etelka died intestate. Under the laws of Switzerland, she had no legal heirs. She had property in Switzerland, part of which consisted of shares in American corporations. She also had, of course, the property here in the hands of her sister's administrator.

The City of Lucerne, through its Estate Office, claimed to be the heir of Etelka. As such, it took possession of the stock certificates left by Malvina, but had some difficulty in securing transfer of these certificates to itself. It also had Mr. Nassau appointed ancillary administrator of Etelka's estate. Mr. Nassau eventually came into possession of the stock certificates

and procured their registration in the name of the Estate Office of the City of Lucerne. He then prepared an account as administrator of Malvina, showing transfer of all the assets of that estate to himself as ancillary administrator of Etelka, and another account as ancillary administrator of Etelka, seeking to transfer all the assets in his hands (consisting of the estate of Malvina and the certificates for the stock left by Etelka) to the Estate Office. The Surrogate granted decrees to settle these accounts. The Attorney-General opposed and has appealed.

As to the property making up the estate of Malvina Utassi, we believe the objection of the Attorney-General was well taken. Of course, these assets passed to her sister by operation of her will and, as such, were rightfully transferred to the ancillary administrator. It is the transfer to the City of Lucerne which we believe to be improper. It appears that by the laws of Switzerland the property of a decedent leaving no persons entitled to inherit under Swiss law falls to the canton where decedent was domiciled.* (Swiss Code, art. 466.) There was unrefuted testimony that the Swiss courts regarded their statute as providing for an inheritance as distinct from an escheat.

We assume this to be true, with the further consequence that property of such decedents does pass by virtue of inheritance to the canton of their domicile. The question is, does such a law have extraterritorial effect so that it controls the devolution of property located outside of Switzerland. It is quite clear that this State has the right to retain property within its borders which, if left by a resident, would be subject to escheat (*Matter of Menschefrend*, 283 App. Div. 463, affd. 8 N Y 2d 1093). This is in no way affected by the fact that this State does not assert an absolute right of escheat but rather a right to hold the property pending assertion of claims to it by persons now unknown (*Matter of Menschefrend, supra*, p. 466). The question presented is, therefore, whether a foreign jurisdiction can, by virtue of declaring itself an heir and taking the property by inheritance rather than by sovereign right, supersede the rights of the sovereign in whose domain the property is located. While a political entity may be a devisee (*United States* v. *Burnison*, 339 U. S. 87), the resulting situation is not the same as where by statute it makes itself, or one of its subdivisions, an inheritor where there is default of other heirs. In such a case it merely changes the name of the legal process by which it comes into possession of the property. In fact, there is an escheat, and

---

* In this instance, the Canton of Lucerne, where the decedent was domiciled, had transferred its right of inheritance, pursuant to statute, to the City of Lucerne.

designating it otherwise has no practical effect in its own jurisdiction and should have none at all outside its borders. What authority there is in this State supports this view.* A contrary view is entertained in England (*Matter of Maldonado* [1954] 2 Week. L. R. 64; [1953] 2 All E. R. 1579). The reasoning of the English cases is that where the deceased is survived by a person who, by the laws of the jurisdiction in which he was domiciled, would inherit from him, England recognizes those laws even as to property situate in England. If those laws name the foreign State as the person to inherit, that legal provision is entitled to equal credit. At the same time England refuses to recognize a foreign statute giving the foreign State a right of escheat in property located within its borders (*Matter of Barnett* [1902] 1 Ch. 847). The English courts pointed to no degree of distinction in substance between the two varieties of statute but rely on the label given the right through which the foreign State claims the property.

Throughout all discussion of this issue runs the thread of reciprocal credit to be given to foreign laws. But this reciprocity can only work to the disadvantage of such States as claim by escheat, and England, Austria and Turkey can never claim property left by their domiciles in Germany, Italy or Switzerland, whereas, under the English rule, Germany, Italy or Switzerland could claim such property in England, Austria or Turkey (*Wolff's Private International Law* [2d ed.], p. 579, quoted by BARNARD, J. in *Matter of Maldonado* [1954] 2 Week. L. R. 64, 70; [1953] 2 All E. R. 1579, 1582, *supra*). This is hardly a reciprocal situation and it becomes more unfair where the law of the State (as in New York) departs from the original theory of escheat (absolute vesting in the State) towards a policy of holding such property for the benefit of whatever persons may eventually be shown to be entitled to it. The rights of such persons are protected under the theory of the *Maldonado* case (followed by

---

* *Matter of Turton* (8 N Y 2d 311). In that case the deceased was a resident of British Honduras. He left property in this State. He had executed two documents purporting to be wills, one of which was offered for probate in British Honduras and one in New York. The government of British Honduras sought to intervene in the New York probate proceedings. One of its grounds was that in default of heirs it was entitled by its laws to inherit and hence had an interest in the probate. The Surrogate denied the application (20 Misc 2d 569). The Appellate Division affirmed (9 A D 2d 759). The Court of Appeals reversed but specifically did not pass upon the question whether British Honduras acquired any rights by virtue of its statute to property in this State, holding that it had a right to intervene to contest the right or propriety of the Surrogate's entertaining the application under the circumstances presented. The dissenting opinions (pp. 316, 318) expressly stated that British Honduras had no right of inheritance in the property located here.

the Surrogate) if the deceased died domiciled in Austria, but not if he died in Spain. It is difficult to see why we should give recognition to such a theory, especially since its only support is a word, but not a concept, in a foreign statute. As to this branch of the appeal, we vote to reverse.

As to the remainder of the property here involved, namely, the stock owned by Etelka in Switzerland, entirely different considerations prevail. That stock came into the hands of the ancillary administrator not in his capacity as such but merely because he happened to be a convenient person to receive it on behalf of the City of Lucerne after it had been transferred. This property came into this State after it had by Swiss law passed to the City of Lucerne and was never ownerless property. As to that, we believe there was no necessity to account, but no harm can result from treating it in the manner in which it was disposed of. We agree that this part of the decree should be affirmed.

The decree should be modified accordingly.

RABIN, J. P., STEVENS and EAGER, JJ., concur in *Per Curiam* opinion; STEUER, J., dissents in part in opinion, in which McNALLY, J., concurs.

Decree, so far as appealed from, affirmed, without costs.