Bergan, J.
In 1935 Malvina S. Utassi died in New York, where she was a resident. She left all her property by will to her sister Etelka Utassi, who, although a citizen of the United States, had been for many years a resident of Lucerne, Switzerland, where she died in 1944.
Etelka left no heirs but under Swiss law in such a case the inheritance passes to the Canton of the last domicile, or to a municipality designated by the Canton, here the City of Lucerne (Swiss Civ. Code, arts. 457 to 466, especially 466).
Proceedings in both estates have been brought before the New York Surrogate; in the case of Malvina by the administrator with the will annexed; and in the case of Etelka by the ancillary administrator, the same person being administrator in both estates.
In the accounting proceedings the Attorney-General asked a direction by the Surrogate that the proceeds of both estates be paid to the New York State Comptroller as “ unclaimed personal property located and situated in the State of New York ” to be held “ for the benefit of the unknown heirs, next of kin or distributees ” of the decedent (Abandoned Property Law, § 600, subd. 1, par. [b] ; § 602, subd. 2; Surrogate’s Ct. Act, § 272). The administrator contended the proceeds of each estate should *440 go to the City of Lucerne which has also appeared in' the proceedings.
The Surrogate overruled the objections by the Attorney-General and directed the payment of the net proceeds of both estates to the City of Lucerne. The Appellate Division affirmed by a court divided as to the payment of the assets of Malvina’s estate to Lucerne, but unanimous that the Etelka assets should be paid to Lucerne.
The Attorney-General appeals and argues that the net estates of both decedents should be paid to the Comptroller to be held by him for the benefit of unknown heirs consistently with the New York statutes.
Although the property in each estate is somewhat similar in character — bonds and stock in a New York corporation—the physical situs of the bond debentures and stock shares differs. In the case of Malvina they have always been in New York and have been sold by the administrator; in the case of Etelka the certificates of debentures and shares were in Switzerland when she died and have been delivered on behalf of Lucerne to her administrator for transfer in New York.
The statement in the note attached to Schedule A of the account in Etelka’s estate that “ The certificates representing the foregoing securities were located in Switzerland at date of death ” has not been factually disputed.
Swiss law would manifestly govern the succession of property found in Switzerland and belonging to a resident thereof dying without heirs (Hutchison v. Ross, 262 N. Y. 381; Simpson v. Jersey City Contr. Co., 165 N. Y. 193). As to this the Appellate Division was in full agreement with the Surrogate that the property of Etelka physically in Switzerland at her death should not be treated as New York abandoned property.
But the estate left by Malvina in New York presents an open question in this State, and its resolution depends, in the end, on the direction public policy should take. Since Malvina died August 13, 1935, almost nine years before her sister in Switzerland (May 13, 1944), the formal transfer of the debentures and stock in New York to Etelka in Switzerland, who by Malvina’s will was entitled to all her property, was merely a matter of routine procedure and in the circumstances it would reasonably *441 have been expected a public administrator would see that this was done (Surrogate’s Ct. Act, art. VIII-A, § 136-z and its predecessor).
But the fact is, that for whatever reason, the property of Malvina remained in New York, and although Etelka was entitled to it, she, in turn, died without taking it out of New York. The law of the country of her residence at the time of her death in terms and in intent makes the City of Lucerne her heir as distinguished from a right by public authority to take her property by escheat.
In the absence of persons “ entitled to inherit ” the “ inheritance falls * * * to the canton where the decedent had the last domicile, or to the municipality designated as entitled by the legislation of said canton.” (Swiss Civ. Code, art. 466.)
An expert in Swiss law and also a member of the Swiss Bar testified that the Canton or municipality would take under this statute “ as strict legal heirs ” and would be “ entitled to inherit ”, and this not by escheat. Nor is the Swiss legal theory based on a confiscatory right or bona vacantia but on the right of inheritance. The witness cited text and other authorities of stature in support of this view and this is not disputed in the record.
Thus the law of Switzerland, creating an inheritance in favor of a public corporation rather than a right to take by an escheat, distinguishes this case from Matter of Menschefrend (283 App. Div. 463, affd. 8 N Y 2d 1093, cert. den. sub nom. Brown v. Lefkowitz, 365 U. S. 842). No right to succession was there claimed under the law of California where decedent died and the problem presented was whether property in New York escheated to California or should be treated as abandoned property here.
The Appellate Division in a thorough examination of the problem held the Abandoned Property Law controlled the disposition of the assets in New York; and in this court the Attorney-General argued that California as the State of domicile “ was not entitled to such property in the absence of a statute providing that it took by succession as an ordinary distributee” (8 N Y 2d 1094).
*442 The basis of the rule of bona vacantia is described by the Surrogate in Public Administrator v. Hughes (1 Bradf. 125, 130) as one growing out of “ an utter absence of any person capable of asserting a claim ’ ’. It is not ‘ ‘ a part of the law of distribution prevailing in the domicil, but being an appendage of sovereignty ”.
Beale, too, notes that the “ escheat of chattels, or more accurately the seizure of the chattels to the state as bona vacantia, is not a matter of succession on death. It is rather a right to confiscate property to which there is no other claimant.” (2 Conflict of Laws, § 309.1.)
Although the right of Honduras to take assets found in New York was not reached on the merits in Matter of Turton (8 N Y 2d 311), this court held Honduras entitled to intervene in the New York proceeding to assert its claim of right to take the assets under Honduras law where testator was domiciled at the time of his death, a right which had been denied by the Surrogate.
Nothing in our statutory law relating to abandoned property, which functionally is a statutory mechanism to hold assets found in this State for the benefit of a future lawful claimant, or in any New York public or legal policy,- should lead us to discredit law of succession of Switzerland, where Etelka was domiciled and died.
Our view of the Swiss law ought not to be parochial. On the contrary we should accord the Swiss statute of succession the recognition which comity between enlightened governments requires.
One might compare a somewhat similar view taken in England (Matter of Maldonado, 2 Week L. R. 64; 2 All E. R. 1579 [C. A.]), where a statute of succession of the government of Spain was given due recognition in respect of property found in England.
The order should be affirmed, without costs.
Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis, Burke and Scileppi concur.
Order affirmed.