OPINION OF THE COURT
Louis D. Laurino, S.
In a proceeding for issuance of letters of administration, petitioner moves to dismiss the objections of Joseph E. Smith, Jr., on the ground that he does not have legal capacity to object to grant of letters to the petitioner, an alleged spouse of decedent. (CPLR 3211.)
Briefly stated, the salient facts are as follows: The decedent, Joseph Elijah Smith, died intestate on August 2, 1980. In August, 1981, a petition for letters of administration was filed in this court by Rosa Lee Smith, identifying herself as the surviving spouse and sole distributee of the decedent. She also set forth the objectant’s name as alleged son of the decedent. The objectant, Joseph E. Smith, Jr., born February, 1963, is the natural son of decedent, however, it is conceded that he was born out of wedlock, the offspring of the common-law relationship between decedent and one Daphne Blunt. The decedent and objectant lived as parts of a family unit for several years until his natural parents separated.
Assuming, arguendo, the truth and accuracy of the objectant’s allegations, the decedent up to the date of his death openly and notoriously acknowledged the objectant as his son; e.g., decedent from the time of separation with *347 his common-law wife financially supported his son even to the extent of providing tuition for private schooling and registering him as his son; objectant was named as son on decedent’s employee records; decedent on regular basis would buy United States Savings Bonds naming objectant as son/beneficiary; for two years prior to his death, the decedent, a public accountant, and the objectant worked together in decedent’s professional practice.
However, this filial relationship was never the subject matter of an order of filiation during the decedent’s lifetime nor was it memorialized in any instrument acknowledging paternity as required by statute (see EPTL 4-1.2, subd [a], par [2], els [A], [B]). The objectant claims his right to inherit and to object to letters issuing to petitioner, solely on the basis of EPTL 4-1.2 (subd [a], par [2], cl [C]) which permits a child born out of wedlock to inherit from and through his father if there is clear and convincing evidence of paternity and proof that the father of the child has openly and notoriously acknowledged the child as his own. This subdivision is the product of recent revision of the statute which the Legislature made effective September 1, 1981 (L 1981, ch 75, § 3) and the issue now is whether this statute should be applied retroactively to grant objectant the right to inherit from his putative father who died approximately one year prior to its effective date. Research discloses that this issue is novel and a true understanding of all of its ramifications requires a short analysis of recent statutory and decisional law with respect to the rights of illegitimates to inherit from natural parents.
At its inception, EPTL 4-1.2 was the work product of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates (hereinafter called the Bennett Commission). In its comprehensive study on the rights of illegitimates to inherit, the Bennett Commission recognized that whereas for over a century the illegitimate had been given the right to inherit from a mother there still existed severe restrictions on an illegitimate’s right to inhereit from the natural father. To “alleviate the plight of the illegitimate” and, keeping in mind the difficulties in the proof of paternity, the statute (EPTL 4- *348 1.2) as proposed by the commission and adopted by the Legislature provided, in part, that for purposes of descent and distribution, “b. An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction [has, during the lifetime of the father,] made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.” (L 1965, ch 958, § 1; see, also, Fourth Report, Temporary State Commission on the Modernization, Revision and Simplification of Laws of Estates, NY Legis Doc, 1965, No. 19, pp 233-271.)
In a sense, the Legislature recognized and responded to the dramatic shift in social mores that swirled around them in 1965, however, the legislative intent of this statute was not meant “to discourage illegitimacy, to mold human conduct or to set societal norms” (Matter of Lalli, 43 NY2d 65, 70). What was intended and was achieved by requiring proof of an order of filiation was the structuring of appropriate legal framework to accord intestate succession to illegitimates and still provide for the “ ‘orderly settlement of estates and the dependability of titles to property passing under intestacy laws’ ”, which daresay is the legislative purpose of EPTL article 4 in its entirety (Matter ofLalli, supra, pp 69-70).
The method used to achieve this legislative purpose was accorded constitutional approval by the highest courts in this State and Nation (Matter of Lalli, supra, affd sub nom. Lalli v Lalli, 439 US 259), but not without some judicial criticism for its requirement of formal order of filiation as the only acceptable proof of paternity by which an illegitimate could receive an intestate share of his father’s estate (Matter of Lalli, supra, p 70 [dissent by Cooke, J.]; Lalli v Lalli, supra, p 277 [dissent by Brennan, J.]).
Despite the lack of constitutional mandate and in response to the criticism leveled at EPTL 4-1.2, the Legislature further liberalized the right of children born out of wedlock to inherit from and through their natural father to include situations not only where there was a timely filiation order but also where the father had signed a formal instrument acknowledging paternity (L 1979, ch *349 139, eff May 29, 1979); or there was clear and convincing evidence of paternity and the father has open and notoriously acknowledged the child as his own (L 1981, ch 75, eff Sept. 1, 1981; see, also, Memorandum of the Law Revision Commission, 1980 Legis Doc, No. 65[B], 1980 McKinney’s Session Laws of NY, p 1639 et seq.).
Both of the amendments were meant to lessen the quantum of proof which would be required to establish paternity and permit intestate succession to a child born out of wedlock. To paraphrase the decisions in Matter of Lalli, of both the New York Court of Appeals and the United States Supreme Court, the Legislature merely added evidentiary elements to the procedural framework which the State would require before permitting intestate succession to illegitimates. In this respect both amendments can be considered remedial or at very least procedural in nature and should be accorded retroactive application. (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 54, 55.) This is the nexus of the problem that now confronts the court.
Retroactive application of either of these two amendments would cause untold havoc to the primary purpose of the entire law of descent and distribution of this State (EPTL art 4) which is to insure the “ ‘orderly settlement of estates and the dependability of titles to property passing under intestacy laws’” (Matter of Lalli, 43 NY2d 65, 69-70, supra). EPTL 4-1.2 is just one of the procedural vehicles used to fix and determine the substantive rights and specific identity of those persons who are the decedent’s distributees. The law is well settled that for purposes of intestate succession, the only persons who can be deemed to be distributees of the decedent are those who qualify as such on the date of death of the decedent. (Matter of Fairchild, 81 NYS2d 111, affd 275 App Div 705, mot for lv to app den 275 App Div 803.) On the date of death the statutory distributees receive a vested interest in the decedent’s net estate which cannot be divested subsequently by legislative fiat without violating the constitutional prohibition of deprivation of private property without “due process of law”. (Cf. Matter of Rodriguez, 100 Misc 2d 983, 987, dictum re retroactive application of EPTL 4-1.2, subd [a], par [2], cl [B].)
*350 As stated by the court in Ferrie v Public Administrator (3 Bradf 249, 263) “This claim to a distributive share cannot by an act of the Legislature be confiscated, or be taken away and granted to another person, and although the law may be changed as to future cases, such a change cannot affect a right of succession already devolved.” Interestingly, the above quote was taken from a decision dated June, 1855, wherein the Surrogate refused to apply retroactively the newly enacted statute which permitted intestate succession to illegitimates in the estates of their mothers — the predecessor to EPTL 4-1.2. The court’s rationale is no less pertinent nor its holding no less applicable to the facts in the present case by dint of passage of time. In the present case, the decedent died on August 2, 1980. On that date, his only statutorily recognized distributee was his surviving spouse, the petitioner. Neither the Legislature nor this court has the power to divest the petitioner of 50% of her vested interest in the decedent’s estate by giving retroactive effect to a statute dated effective one year after date of death, September 1,1981. This is precisely what the objectant who claims his right as distributee pursuant to EPTL 4-1.2 (subd [a], par [2], cl [C]) would have us do.
Accordingly, the motion to dismiss his objections must be granted.