opinion of the court
Bertram R. Gelfand, J.
In this proceeding seeking the issuance of letters of administration decedent died on September 5, 1980. Petitioner alleges that she is decedent’s nonmarital daughter and that she has the status of a distributee pursuant to the present provisions of EPTL 4-1.2. Objections to the issuance of letters to petitioner have been filed by decedent’s mother who contends that under the statute which should be applied to the facts this petitioner is not a distributee of decedent. A cross petition seeking letters of administration has been filed by a designee of decedent’s mother. The mother’s position and that of her designee is that decedent’s mother is his sole distributee.
The basic question presented is whether the issue is controlled by EPTL 4-1.2 as it existed on the date of decedent’s death or as it now exists. It was stipulated on the record in open court that the hearing would be held in abeyance subject to a determination of this question of law (see Matter of Smith, NYLJ, Aug. 24, 1982, p 10, col 7).
*166 The United States Supreme Court in addressing New York State’s statutory limitations on the right of a non-marital child to inherit has made it explicitly clear that the right to inherit is a product of State law which will not be interfered with in the absence of a clear constitutional infirmity (Lalli v Lalli, 439 US 259). In New York State, the scope of a nonmarital child’s right to inherit from his father is governed by EPTL 4-1.2. At the time of decedent’s death, this statute provided that a nonmarital child could not inherit from his deceased father unless an order of filiation declaring paternity was entered during the decedent’s lifetime or the relationship was memorialized in a witnessed instrument acknowledging paternity filed with the Putative Father Registry within 60 days of its execution (see EPTL 4-1.2, subd [a], par [2], els [A], [B]). It was basically this statute that was the subject of Lalli v Lalli (supra). On April 21, 1981, the Governor signed into law chapter 75 of the Laws of 1981 adding to EPTL 4-1.2 (subd [a], par [2]) a new clause (C). This new clause permits a child born out of wedlock to inherit from and through his father if there is clear and convincing evidence of paternity and proof that the father of the child has openly and notoriously acknowledged the child as his own. The chapter, although enacted on April 21, 1981, specifically includes a provision that its effective date is September 1, 1981 (L 1981, ch 75, § 3).
Petitioner argues that the amended provisions of EPTL 4-1.2 are applicable to all pending cases regardless of the date of death of decedent. It is the position of the respondent that these amended provisions are applicable only to those matters involving a decedent who died on or after September 1, 1981. The proof which petitioner endeavored to adduce indicates that upon the determination of this issue depends the status of this petitioner, as undoubtedly it affects countless petitioners similarly situated.
Two of my distinguished and respected colleagues have extensively discussed whether the Legislature could or could not constitutionally enact a retroactive change in the criteria for nonmarital children qualifying as heirs on the paternal side. These scholarly analyses reached different results as to the intent of the Legislature (see Matter of *167 Smith, 114 Misc 2d 346; and, contra, Matter of Kenny, 114 Misc 2d 203). Much of the discussion in both of the aforesaid opinions is devoted to whether the Legislature could constitutionally enact a statute which retroactively would alter who was entitled in intestacy to the property of a decedent as of the date of that decedent’s death. There seems to be substantial authority supporting the determination of Surrogate Laurino in Matter of Smith (supra), that to retroactively apply such an amendment would constitute an ex post facto divesting of vested property rights which pursuant to well-established principles of law had absolutely vested at the instant of decedent’s death (see Clark v Cammann, 160 NY 315, 328-329; People v Powers, 147 NY 104; Dodin v Dodin, 16 App Div 42, affd 162 NY 635; Matter of Bruce, 38 Misc 2d 1035; Matter of Herman, 44 Misc 2d 585; Ferrie v Public Administrator, 3 Bradf 249; 9 Rohan, NY Civ Prac, par 4-1.1 [19]). Surrogate Bloom in Matter of Kenny (supra) essentially argues that the Legislature could constitutionally so proceed at least as to the property of those persons who had died subsequent to the Governor’s signing the amendment to EPTL 4-1.2 on April 21, 1981 and prior to the statute’s stated effective date of September 1,1981. In reaching this result, great reliance is placed upon a validly discerned prior broad public policy indicative of a tendency toward broadening the right of nonmarital children to inherit from the paternal side of their family.
It is respectfully concluded that before it is necessary to reach whether the Legislature could in fact retroactively enact such legislation it must first be determined whether it endeavored to so proceed. While this court may share the sympathies expressed for nonmarital children in Matter of Kenny (supra), in the absence of the clear necessity to strike down a statute because it contains a constitutionally infirm mandate, it is not for the courts to determine what the Legislature should have done, but rather to be governed by what the Legislature did do.
It is a well-established axiom of statutory construction that in the absence of a clear legislative expression of intent that a statute should be afforded retroactive application that all statutes must be viewed as prospective (see *168 McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 51-55). As recently as November 30, 1982, the Supreme Court of the United States in United States v Security Ind. Bank (459 US ___, 74 L ed 2d 235, 103 S Ct 407) reaffirmed this axiom in refusing to give retroactive impact to a section of the Bankruptcy Act of 1979 (US Code, tit 11). In reaching its conclusion the majority specifically pointed out the jeopardy of tampering with vested property rights when it restated that in the absence of a clear legislative intent to alter established property rights, courts should decline to construe a statute in a manner which will alter existing property rights and lead to the court being called upon to resolve difficult and sensitive questions which will then necessarily arise out of the guarantees contained in the “taking clause” of the United States Constitution (US Const, 5th Arndt).
The nature of inheritance laws reaffirms the intent which flows from the Legislature’s clear use of plain language in fixing the effective date of its amendment. For purposes of intestate succession, the only persons generally deemed to be distributees of a decedent are those who qualify as such on the date of decedent’s death (Clark v Cammann, supra; People v Powers, supra; Dodin v Dodin, supra; Matter of Bruce, supra; Matter of Herman, supra; Ferrie v Public Administrator, supra; 9 Rohan, NY Civ Frac, par 4-1.1 [19]). It has generally been held that the proscription against retroactive application of statutes is particularly appropriate in the area of laws relating to descent and distribution since any other course would impair vested rights (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 56). Exceptions to the rule have generally been limited to “remedial” legislation or statutes dealing with “procedural” matters (see McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 54-55). In the instant case, since the amendment may be read as significantly liberalizing the quantum of proof required to sufficiently establish paternity for intestate succession, it may be argued that it is remedial or procedural in nature, and, consequently, could form a basis for according it retroactive application. However, it can be argued with at least equal force that any such reading of the amendment is *169 unduly narrow in that this amendment not only fixed the quantum of proof, but created entirely new criteria for qualifying as an heir which new criteria were previously totally absent from New York’s statutory inheritance scheme. As was observed by the Court of Appeals in Becker v Huss Co. (43 NY2d 527, 540-541), characterizations of amendments as remedial or procedural are to a great extent an exercise in semantics and “As is often the case the classic canons of statutory construction hardly settle the controversy * * * Instead, examination of legislative intent, if it be discernible, recognition of the flexibility of the [statute at issue] in achieving its social goals, and consideration of the practicalities and the realities offer more fruitful and sounder analysis”. This is the course which must clearly be followed. The search is not for what the Legislature could or should have done, but for what it did do.
The subject matter of EPTL 4-1.2 was carefully discussed in the “Bennett Commission” report (Fourth Report, Temporary State Comm on Modernization, Revision & Simplification of Laws of Estates, NY Legis Doc, 1965, No. 19, pp 233-271). A review of the legislative history of EPTL 4-1.2 from its original enactment and subsequent amendments (L 1965, ch 958, § 1; L 1967, ch 686, § 28; L 1979, ch 139, § 1; L 1981, ch 75, § 1) reveals successive efforts at liberalizing the rights of nonmarital children to inherit from their fathers. Each step forward was carefully and painstakingly taken subsequent to this report. Based upon this history, it cannot be concluded that the failure to sooner include the liberalizing features of the recent amendment was merely a matter of procedural oversight which the Legislature decided to correct in 1981. Prior to the enactment of the instant amendment, the Legislature had obviously reached a conclusion as to the extent to which it wished to proceed in establishing a right of paternal inheritance for nonmarital children while still adequately protecting other interested parties from “fraudulent claims of heirship and harassing litigation” (Fourth Report, Temporary State Comm on Modernization, Revision & Simplification of Laws of Estates, id., p 265). That subsequent to the initial enactment the Legislature established broader limits based *170 on new insight and experience does not alter the explicit limits of any earlier legislation retroactively. Moreover, it is equally clear that even under the present amendment the Legislature is still balancing the rights of all conflicting possible interested parties. Clearly, there still exists a significant class of nonmarital children who could possibly establish the identity of their fathers, but not to an extent that would satisfy the legislatively established criteria that would entitle them to inherit from their father’s estate.
Consideration must also be given to the axiom that where a statute is subject to two interpretations, one of which would render it susceptible to constitutional attack and the other not, the court should adopt a construction which would render it immune from constitutional attack (see Weiler v Dry Dock Sav. Inst., 258 App Div 581, affd 284 NY 630). Unquestionably, the amendment at issue created a new group of persons who now can qualify as distributees. Thus, applying the amendment retroactively by giving the right to inherit to those who previously did not possess it will inevitably raise constitutional issues based on a claim that any such course constitutes divesting the existing rights of others in property. Are these interests any less vested merely because they have not been fully distributed? Can we distinguish between a distributed and undistributed vested interest? A serious question arises as to the constitutional permissibility of embracing such distinctions (Matter of Luber, 109 Misc 2d 1065, 1067; Matter of Rodriguez, 100 Misc 2d 983, 987; Matter of Fay, NYLJ, July 8, 1980, p 11, col 4; Ferrie v Public Administrator, 3 Bradf 249, supra; Matter of Barringer, 29 Misc 457). It appears that the Legislature was cognizant of these potential constitutional problems and chose to avoid them.
Similarly, the Law Revision Commission report in support of the recent amendment reflects a sensitivity to avoiding these issues. This report specifically refers to the dicta contained in the decision of this court in Matter of Rodriguez (supra), questioning whether an earlier 1979 amendment as to the rights of nonmarital children could constitutionally be applied retroactively (Mem of NY Law Rev Comm NY Legis Doc, 1980, No. 65 [B], McKinney’s *171 Session Laws of NY, 1980, p 1639 et seq.). Consequently, it is clear that the Legislature was cognizant of a possible constitutional problem if the amendment was to be given retroactive application.
It is noted that Matter of Kenny (114 Misc 2d 203, supra), in reaching the conclusion that the amendment should be applied retroactively, based upon the facts presented in that case, recognized the havoc such a result would have upon the administration of many estates, and, therefore, indicated that the holding was limited to those cases where distribution of the estate had not been theretofore accomplished and that no decree determining distributive status which was incompatible with the invocation of the amendment was then in existence. This judicially created limitation cannot be discerned in the Legislature’s creation. Its apparent lack of feasibility as a formula for addressing those countless situations in which real property may have been transferred in good faith to bona fide grantees for value supports the existence of a legislative intent to avoid these issues by enacting a totally prospective statute.
Here, not only is there not a clear expression from a reading of the amendment that the Legislature intended it to be applied retroactively, but the enactment provision itself lends crucial support to a contrary conclusion by stating specifically: “This act shall take effect on the first day of September next succeeding the date on which it shall have become a law” (L 1981, ch 75, § 3). The weight to be given to such a specific statement is aptly expressed in Matter of Deutsch v Catherwood (31 NY2d 487, 489), where Judge Gabrielli writing for all six Judges participating stated: “It cannot be successfully claimed that the Legislature intended the statute to have any retroactive application. The postponement of the effective date of each amendment furnishes critical and clear indicia of intent. If the amendments were to have retroactive effect, there would have been no need for any postponement” (see, also, Matter of Mulligan v Murphy, 14 NY2d 223; Matter of Ayman v Teachers’ Retirement Bd. of City of N. Y., 9 NY2d 119; Matter of Cady v County of Broome, 87 AD2d 964; Phillips v Agway, Inc., 88 Misc 2d 1087; Jespersen-Kay Modular *172 Constr. v Clinton Ave. Paul Place Houses, 85 Misc 2d 721; Matter of Kaufman, 158 Misc 102, 106).
This court, as was the Legislature, and as are most, is sympathetic to the rights of nonmarital children. No one can dispute that it is fair to avoid imposing on children the omission of their parents. However, this sympathy cannot be the basis for a court embracing a conclusion that when the Legislature clearly embraced a course under which it stated a prospective effective date for a statute that it had some hidden intent to afford retroactive application to the amendment. It is particularly impossible to embrace such a conclusion where it would attribute to the Legislature a purpose which at the least would raise serious constitutional complications of untold scope which would interfere with the orderly administration and distribution of countless estates while complex issues traveled through the courts with no definitive answer until a matter reached a court of last resort. This is a circumstance which any Legislature understandably seeks to avoid in enacting a statute. Accordingly, it is concluded that the intent of the Legislature is clearly expressed in the plain language of its enactment of EPTL 4-1.2 (subd [a], par [2], cl [C]). This amendment creates a right of distribution that took effect on September 1, 1981 and is accordingly applicable only to the property of decedent’s dying on or after that date.
Since petitioner has no rights under the amended statute there is no basis to entertain proof that petitioner meets the criteria set forth under the amendment. Petitioner is accordingly limited to adducing proof as to her right to distribution under the criteria set forth in EPTL 4-1.2 as it existed on the date of decedent’s death. This matter will appear on the court’s calendar on the adjourned date for continued hearing unless petitioner shall indicate in writing to the court and to the objectant and cross petitioner that she does not wish to adduce any further evidence. The parties may settle an intermediate order based upon the determinations reached herein or await the conclusion of the hearing.