Mary A. CHARLES for Adele CHARLES, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. CV 80–1363.

United States District Court, E.D. New York.

Aug. 5, 1983.

Arthur J. Fried, Supervising Atty., Legal Aid Soc., Administrative Law Unit, New York City, for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by Laura R. Handman, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

MEMORANDUM & ORDER

PLATT, District Judge.

Mary Charles has brought this action on behalf of her daughter, Adele Charles, pursuant to Section 205(g) of the Social Security Act for a review of a final decision of the Secretary of the Department of Health and Human Services which denied her claim for Surviving Child's Insurance Benefits (child's benefits).

On September 29, 1978, Charles Austin, an insured wage earner, died suddenly at the age of 31. Ms. Charles alleges that Adele, with whom she was pregnant at the time and who was born five months later, is the child of Charles Austin and as such is entitled to child's benefits. Ms. Charles testified at the hearing before the Administrative Law Judge that she had lived with Mr. Austin from 1973 to 1975 during which time he contributed to her support, but that in 1975 the relationship was terminated. Although the relationship was resumed in October, 1977, and Mr. Austin spent substan-

tial periods of time at Ms. Charles's apartment, they maintained separate apartments and, except for small contributions, Ms. Charles supported herself (Tr. at 28–38).

Following the February 17, 1979 birth of her daughter, Ms. Charles, on July 3, 1979, filed an application with the Secretary for child's benefits. The Administrative Law Judge denied the claim finding that Adele was not the child of Charles Austin under any section or subsection of Section 216(h) of the Social Security Act. Although Ms. Charles submitted to the Appeals Council a copy of an order of filiation, dated March 9, 1981, from the New York State Family Court which determined that Mr. Austin was the father of Adele Charles, the Council affirmed the ALJ's denial, concluding that because the decree was issued after the death of the wage earner, § 216(h)(3)(C)(i)(II) of the Act was not applicable.[1]

## DISCUSSION

In order to qualify for child's benefits under the Social Security Act, a child must have been dependent upon the insured parent at the time of the parent's death. 42 U.S.C. § 402(d)(1)(C)(iii). Although a legitimate child is conclusively presumed to be dependent upon his natural parents, 42 U.S.C. §§ 402(d)(3)(A) and 416(e)(1), illegitimate children must meet one or more further qualifying provisions. Section 416(h) of the Act, which sets forth the various guidelines under which it may be determined whether an individual is the dependent child of an insured wage earner, provides that an applicant who could take intestate personal property under the laws of the State in which the insured wage earner was domiciled at the time of his death will be considered a dependent child for the purposes of the Act. 42 U.S.C. § 416(h)(2)(A).

Article 4–1.2(a)(2) of the Estates, Powers and Trusts Law of New York (the State in which Mr. Austin was domiciled at the time of his death) provides, in relevant part, that "[a] child born out of wedlock is the legitimate child of his father so that he and his issue inherit from his father ... if: (A) a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity." Because the order of filiation in this case was made *after* Mr. Austin's death, the Appeals Council was unwilling to base an award on it.

However, on September 1, 1981, an amendment to Article 4–1.2 became effective. This amendment classifies a child born out of wedlock as the legitimate child of his father for intestate purposes if "paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own." N.Y.Est. Powers & Trusts Law § 4–1.2(a)(2)(C). Thus, because the March 9, 1981 order of filiation clearly meets the first part of this test, and because Mr. Austin's repeated acknowledgments to Ms. Charles, his mother and his sister that Ms. Charles was pregnant with his child (Tr. at 32, 57, 59, 98) satisfy the second part of the test, Adele has established her entitlement to child's benefits under the new law. The more difficult question for this Court, however, is whether the new law would be applied by the New York courts in determining devolution of intestate personal property given the facts presented here.

Three New York Surrogate's Courts have addressed the issue of whether N.Y.Est. Powers & Trusts Law § 4–1.2(a)(2)(C) should be given retroactive effect. Two of these courts declined to apply the amendment retroactively. *See Estate of Smith,* 118 Misc.2d 165, 460 N.Y.S.2d 441 (1983)

---

1. 42 U.S.C. § 416(h)(3)(C)(i)(II) provides:

An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:

   *     *     *     *     *     *

(C) In the case of a deceased individual—

(i) such insured individual—

   *     *     *     *     *     *

(II) had been decreed by a court to be the father of the applicant

   *     *     *     *     *     *

and such ... court decree ... was made before the death of such insured individual....

(Surrogate's Court, Bronx Co.); *Estate of Smith,* 114 Misc.2d 346, 451 N.Y.S.2d 546 (1982) (Surrogate's Court, Queens Co.). One court, however, did apply the amendment retroactively. *See Estate of Kenny,* 114 Misc.2d 203, 450 N.Y.S.2d 1003 (1982) (Surrogate's Court, Kings Co.). These courts all devoted significant discussion to the question of whether the legislature could constitutionally enact a statute which retroactively might alter who was entitled in intestacy to the property of a decedent as of the date of the decedent's death. Indeed, in the one case where the statute was applied retroactively, the court emphasized that at the time the proceeding was brought by the alleged daughter of the decedent, distribution of the decedent's estate had not yet been carried out and no decree determining distributive status was then in existence. *Estate of Kenny, supra,* 114 Misc.2d at 219, 450 N.Y.S.2d at 1012; *cf. Estate of Smith, supra,* 114 Misc.2d at 349, 451 N.Y.S.2d at 548–49 ("On the date of death the *statutory* distributees received a vested interest in the decedent's net estate which cannot be divested subsequently by legislative fiat without violating the constitutional prohibition of deprivation of private property without 'due process of law.' ") (Emphasis added).

Here, on the other hand, retroactive application of this amendment, if deemed incorporated by the Social Security Act, presents no danger of divesting other individuals of statutorily vested property rights, with the indicated constitutional consequences. Thus, the apparent obstacle which compelled two of the New York courts to deny retroactive effect does not exist in the context of this plaintiff's child's benefits claims. Furthermore, retroactive application of this amendment would be consistent with the remedial objectives that have prompted the substantial revisions of Article 4–1.2 of the EPTL during the last fifteen years by the New York Legislature. *See generally, Estate of Kenny, supra,* 114 Misc.2d at 206–07, 215–18, 450 N.Y.S.2d at 1005, 1010–11. Finally, although there is no evidence of an express[2] intent on the part of the New York Legislature as to whether or not this amendment was to have retroactive effort, the New York Court of Appeals has stated that even absent such evidence the courts may still apply New York statutes retroactively where, as here, the legislation is of a remedial nature and where, as here, retroactive application would not economically disadvantage private parties or interests. *Becker v. Huss Co., Inc.,* 43 N.Y.2d 527, 540, 402 N.Y.S.2d 980, 984, 373 N.E.2d 1205, 1208 (1978).

In the last analysis, the question may well be whether, under circumstances where there are no surviving individuals entitled to take by intestacy under New York law and the decedent's estate would be escheated to the State not by "statute" but by the common law,[3] the New York courts would apply this new amendment retroactively in accordance with such legislatively indicated remedial objectives. We think there is little doubt but that they would in view of the analyses and statements made in the above cited New York Surrogate's Court opinions. Furthermore, in our view this is a sufficiently analogous set of circumstances to that in the case at bar to require a similar result.[4]

**2.** It must be noted, however, that evidence of an implied intent on the part of the Legislature not to accord retroactive effect to the amendment may be drawn from the fact that the amendment, though enacted on April 21, 1981, specifically includes a provision that its effective date is September 1, 1981 [L.1981, Ch. 75 § 3].

**3.** *See In re Hammond's Estate,* 2 A.D.2d 160, 154 N.Y.S.2d 820 (2d Dept.1956), *aff'd* 3 N.Y.2d 567, 170 N.Y.S.2d 505, 147 N.E.2d 777 (1958); *Matter of Menschefrend,* 283 A.D. 463, 128 N.Y.S.2d 738 (1st Dept. 1954); *In re Kelly's Estate,* 190 Misc. 250, 72 N.Y.S.2d 897 (1947)

(Surrogate's Court, Monroe Co.); *see also* N.Y. Aband.Prop. Law § 200.

**4.** Indeed, in *Matter of Menschefrend, supra,* at 465, 128 N.Y.S.2d 738, the Appellate Division First Department cited with approval the following passage from an 1887 New York Court of Appeals decision which stated as follows:

With reference to the personal estate of persons dying intestate without next of kin, it appears to have been the uniform practice of the State since its organization to take such property, and hold it either for the benefit of the community at large or some division of the State, *or to be returned to such persons*

1344

Accordingly, we hold that plaintiff has established entitlement to benefits (both prospective and retrospective[5]) under section 402(d) of the Social Security Act. Thus, plaintiff's motion for judgment on the pleadings is hereby granted and defendant's motion for judgment on the pleadings is hereby denied.[6]

SO ORDERED.

as may from considerations of natural justice and equity seem to the legislature to be entitled thereto.

*Johnson v. Spicer,* 107 N.Y. 185, 201, 13 N.E. 753 (1887) (Emphasis added).

5. Even if we adopted a contrary interpretation of Article 4–1.2(a)(2) and ruled that the amendment not be enforced retroactively, we might very well be compelled to hold that denial of full benefits—both prospective *and retrospective*—under the facts of this case would violate plaintiff's rights under the Equal Protection Clause. *See Handley v. Schweiker,* 697 F.2d 999 (11th Cir.1983); *See also Mills v. Habluet-*

*zel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982). However, the approach we have taken in this opinion avoids the necessity of addressing that difficult constitutional question.

6. In a Report and Recommendation dated June 14, 1983, United States Magistrate A. Simon Chrein recommended that this Court affirm the Secretary's decision denying child's benefits to plaintiff. Because Magistrate Chrein was unaware of the amendment to N.Y.Est. Powers & Trusts Law § 4–1.2, his Report and Recommendation undertook a different analysis than is undertaken in this opinion.