**UNITED STATES of America, Plaintiff,**

v.

**Anthony COMPARATO, individually and as Administrator of the Estate of John Comparato; Mildred Comparato; Millicent Comparato; Diana Comparato Carlucci; Baron & Vesel, P.C.; and James Collins, Clerk of the Surrogate's Court of New York, Queens County, Defendants.**

No. CV 92–3326(RR).

United States District Court,
E.D. New York.

July 2, 1993.

Zachary W. Carter, U.S. Atty., E.D. of N.Y., Civ. Div., Brooklyn, NY by Thomas A. McFarland, for plaintiff.

U.S. Dept. of Justice, Tax Div., Washington, DC by Deborah S. Meland, for plaintiff.

Frederic P. Szostek, Woodside, NY by Frederic P. Szostek, for defendants Anthony Comparato, Mildred Comparato, Millicent Comparato, and Diana Comparato Carlucci.

Baron & Vesel, P.C. by David A. Vesel, Steven M. Weinstein, defendant pro se.

Office of Court Admin. New York City by Michael Colonder, for defendant James J. Collins.

### MEMORANDUM and ORDER

RAGGI, District Judge:

The United States brings this action to reduce to judgment the tax liabilities of Anthony and Mildred Comparato, which now exceed $890,000. Because the principal asset to which the United States would look to collect on the Comparatos' indebtedness is

$650,000 in escrow accounts, which monies represent the settlement proceeds of malpractice actions relating to the Comparatos' deceased son, plaintiff further seeks a judgment setting aside the Comparatos' attempts to renounce their interests in this property. The United States submits that a taxpayer cannot renounce a vested right to property to defeat a federal tax lien. Because this case presents no factual dispute as to the Camparatos' tax liabilities, the United States asks this court to resolve the renunciation issue in its favor on a motion for summary judgment. Having carefully considered the submissions of the parties and the applicable law, the court concludes that the attempted renunciations do not defeat the federal tax liens. Summary judgment is, therefore, granted in favor of the United States against Anthony and Mildred Comparato.

### Factual Background

#### 1. The Comparatos' Tax Liabilities

The long history of civil and criminal tax disputes between the Comparatos and the United States is detailed in a recent Tax Court opinion, *Comparato v. Commissioner of Internal Revenue,* 65 T.C.M. (CCH) 1890, 1993 WL 36033 (T.C.1993), familiarity with which is assumed. Because that decision resolves all outstanding disputes between the parties as to the Comparatos' tax liabilities, this court simply notes the following now-undisputed jeopardy assessments filed against the Comparatos by the Internal Revenue Service.

With respect to Anthony Comparato:

(1) On September 30, 1985, he was assessed **$10,253.75** in tax, interest, and penalties for tax year 1983.

(2) On May 19, 1986, he was assessed **$1,108.12** in tax, interest, and penalties for tax year 1984.

(3) On July 7, 1986, he was assessed **$365,-048.19** in tax, interest, and penalties for tax year 1985.

(4) On October 27, 1986, he was assessed **$14,832.74** in tax, interest, and penalties for tax year 1986.

(5) On August 23, 1989, he was assessed a total of **$153,565.00** representing $32,379.00 in tax, interest, and penalties for tax year 1974, $72,197.00 for tax year 1975, and $48,-989.00 for tax year 1976.

(6) On August 23, 1989, he was further assessed **$131,727.19,** representing $1,044.00 in tax, interest, and penalties for tax year 1981, an additional $23,791.75 for tax year 1982, an additional $20,327.50 for tax year 1983, and an additional $86,563.94 for tax year 1984.

These assessments total **$676,534.99.**

With respect to Mildred Comparato:

(1) On August 23, 1989, she was assessed **$118,841.00,** representing $20,447.00 in tax, interest, and penalties for tax year 1974, $58,416.00 for tax year 1975, and $39,978.00 for tax year 1976.

(2) On August 23, 1989, she was further assessed **$96,674.22,** representing $1,044.00 in tax, interest, and penalties for tax year 1981, $4,324.50 for tax year 1982, $3,966.00 for tax year 1983, and $87,339.72 for tax year 1984.

These assessments total **$215,515.22.**

#### 2. Malpractice Actions Relating to the Treatment and Death of John Comparato

John Comparato, the son of defendants Anthony and Mildred Comparato, was born a quadriplegic in 1965. An extremely sick child, he suffered two strokes before the age of seven and required constant care and medical attention. On March 30, 1984, John Comparato died intestate at the age of 19.

While John Comparato was still alive, a malpractice action was brought in his name in New York State Supreme Court against various defendants to recover damages for pain and suffering. After his son's death, Anthony Comparato was appointed administrator of his estate by the Surrogate's Court in Queens County and in that capacity pursued both the pain and suffering claim and a further action against the same defendants for wrongful death. The claim for pain and suffering was ultimately settled for $350,000; the claim for wrongful death was settled for $500,000.

Sometime in 1989, the date not being clear from the record before this court, Mr. Comparato petitioned the Surrogate's Court *inter alia* to approve this settlement and to permit payment therefrom of various expenses, including legal fees. He asked that the net proceeds be distributed equally as between himself and his wife as his son's statutory distributees. Before the court acted on this request, however, the Internal Revenue Service, (referred to herein as the "IRS"), in August 1989, served notices of levy on Baron & Vesel, attorneys for the Comparato estate, and on the defendants in the malpractice actions, citing tax liens against both Anthony and Mildred Comparato. This prompted Mr. Comparato to again seek the assistance of the Surrogate's Court. On September 8, 1989, he advised that court that he and his wife were pursuing court challenges to the federal tax assessments. He asked the Surrogate to issue an order directing the payment of settlement funds into an escrow account pending final determination of the tax proceeding. On August 22, 1990, the Surrogate did issue such an order, but permitted payment of $200,000 in attorney fees, thereby leaving $650,000 to be deposited in eleven separate escrow accounts.

### 3. The Renunciations

In the interim, on March 6, 1990, tax counsel for the Comparatos wrote to District Counsel for the IRS expressing his clients' desire to have the settlement proceeds applied to their tax indebtedness, subject to refund if they were to prevail on appeal. The record fails to reveal what, if any, steps the parties took toward this end. What is undisputed is that the following year, on April 10, 1991, Anthony and Mildred Comparato executed separate, but otherwise identical, renunciations of their interests in the estate of their deceased son pursuant to Section 2–1.11 of the New York Estates, Powers and Trusts Law (McKinney 1981 & Supp.1993). Because these renunciations were not filed within the nine-month statuto-

ry period, the Comparatos were obliged to seek an extension of time from the Surrogate's Court. An order to show cause why the extension should not be granted was issued on August 10, 1991 and served on, among others, the Internal Revenue Service. The IRS, which enjoyed sovereign immunity from being joined in the New York action, did not respond to the order.[1] On September 23, 1991, the Surrogate permitted the renunciations to be filed out of time. *In re Estate of John Comparato,* No. 1910/86 (Surr.Ct.Queens County Sept. 23, 1991).

On May 1, 1992, the Comparatos' remaining children, Diana and Millicent, petitioned the Surrogate's Court to intervene in the administration of their brother's estate, which application was granted on July 21, 1992. By law, they would succeed their parents as statutory distributees of John Comparato. *See* N.Y.Est.Powers & Trusts Law § 4–1.1(a)(5) (McKinney Supp.1993).

On July 15, 1992, the United States commenced this action. The Surrogate's Court is apparently awaiting the outcome of this case before making any final disposition of the monies it ordered placed in escrow.

### Discussion

### I. Federal Tax Liens

■ Federal law provides that if a taxpayer fails to pay his due to the United States Treasury, there "shall be a lien in favor of the United States upon all rights and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321 (1988). The statute's reach is deliberately broad and is meant "to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce,* 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). Accordingly, a tax lien attaches as soon as the Secretary of the Treasury issues an assessment of tax liability. 26 U.S.C. § 6322 (1988). Moreover, the lien reaches both current and after-acquired property. *Glass City Bank of*

---

1. The United States submits, and the Comparatos do not dispute, that the United States was not obliged to respond to the order to show cause since it was not formally sued pursuant to 28 U.S.C. § 2410 (1988 & Supp. III 1991), which permits the United States to be named as a party to state actions to quiet title to property, whether real or personal, on which the United States claims a lien.

*Jeanette, Pa. v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); *accord United States v. McDermott,* —— U.S. ——, ——, 113 S.Ct. 1526, 1527, 123 L.Ed.2d 128 (1993).

In this case, it is undisputed that, as a result of the various jeopardy assessments filed against Anthony Comparato, the United States has six liens in effect totalling $676,-534.99. Similarly, it is undisputed that, as a result of the assessments filed against Mildred Comparato, the United States has two liens in effect totalling $215,515.22.

■ The threshold question in any case to enforce a tax lien is whether a taxpayer possesses "property" to which such a lien could attach. The answer depends in the first instance on state law, which "controls in determining the nature of the legal interest which the taxpayer [has] in the property. . . ." *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); *accord United States v. National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925; *Don King Prods., Inc. v. Thomas,* 945 F.2d 529, 534 (2d Cir.1991) ("[W]hether the [federal] tax lien has attached depends on the state law question of ownership, since the lien can only attach to property that the taxpayer owns.").

In this case, the parties sharply disagree as to whether the Comparatos have any property right under New York law to the $650,000 settlement proceeds placed in escrow by the Surrogate's Court. This court finds that the Comparatos do each possess separate property interests in these proceeds to which federal tax liens have attached pursuant to 26 U.S.C. § 6321. But because New York law differs somewhat as to those proceeds attributable to the pain and suffering claim and those attributable to wrongful death, the court considers them separately.

### A. The Pain and Suffering Claim

■ A malpractice action seeking damages for pain and suffering can survive the death of the original claimant and be pursued on behalf of his estate. N.Y.Est.Powers & Trusts Law §§ 11–3.2(b) (McKinney Supp. 1993), 11–3.3(a) (McKinney 1967); *accord Antoine v. State,* 103 Misc.2d 664, 668 & n. 2, 426 N.Y.S.2d 917, 920–21 & n. 2 (Ct.Cl.1980). Thus, when Anthony Comparato, as administrator, settled his deceased son's action for pain and suffering, he acquired an asset for the estate.

Under New York law, the presumptive heirs of an intestate child such as John Comparato are his parents, each of whom is entitled to receive one-half of the estate's net proceeds. N.Y.Est.Powers & Trusts Law § 4–1.1(a)(4) (McKinney Supp.1993). The Comparatos, however, contend that they have no right to the estate proceeds until the Surrogate issues a final order of distribution. In fact New York law is to the contrary.

■ A statutory distributee acquires "a vested interest in the decedent's net estate" on the date of the person's death, not on the date of distribution or determination of the estate's proceeds. *See In re Estate of Smith,* 114 Misc.2d 346, 349, 451 N.Y.S.2d 546, 548–49 (Surr.Ct.Queens County 1982) (because interest vests on date of death, retroactive application of changes in law affecting inheritance violates due process); *see also In re Wilson's Estate,* 298 N.Y. 398, 403, 83 N.E.2d 852, 854 (1949) (legacy vests immediately upon death of testatrix); *Kingsland v. Murray,* 133 N.Y. 170, 174, 30 N.E. 845, 846 (1892) (title to real estate vests in heirs immediately upon death of owner); *Turchiano v. Woods,* 85 Misc.2d 991, 992, 381 N.Y.S.2d 775, 777 (Sup.Ct.Queens County 1976) (same as *Kingsland*); *In re Fry's Estate,* 28 Misc.2d 949, 950, 218 N.Y.S.2d 755, 757 (Surr.Ct.Suffolk County 1961) (all real property not disposed of by will vests immediately in the statutory distributees).[2]

Applying this principle to the instant case, Anthony and Mildred Comparato's property rights as statutory distributees of their son's intestate estate vested when he died on March 30, 1984. Thus, to the extent the settlement proceeds of his action for pain and

---

2. All distinctions at law between real and personal property were eliminated as of September 1, 1967. *See* N.Y.Est.Powers & Trusts Law § 1– 2.15 (McKinney 1981); 38 N.Y.Jur.2d, Decedents' Estates § 54 (1984).

suffering are a part of that estate, the federal tax liens attach to the parents' interests in these proceeds.

### B. *Wrongful Death Claim*

██ Under New York law, a wrongful death action, unlike one for pain and suffering, belongs to a decedent's statutory distributees, not to his estate.[3] *E.g., George v. Mt. Sinai Hosp.,* 47 N.Y.2d 170, 176, 390 N.E.2d 1156, 1159, 417 N.Y.S.2d 231, 235 (1979) (citing N.Y.Est.Powers & Trusts Law § 5–4.1); *accord Dawson v. Langner,* 106 A.D.2d 152, 153, 484 N.Y.S.2d 743, 744 (4th Dep't 1985); *Alberino v. Long Island Jewish–Hillside Medical Center,* 87 A.D.2d 217, 218, 450 N.Y.S.2d 857, 859 (2d Dep't 1982); *Antoine v. State,* 103 Misc.2d at 668 n. 2, 426 N.Y.S.2d at 921 n. 2. Moreover, this "property right . . . accrues to the distributees and *vests* in them at decedent's death." *Alberino v. Long Island Jewish–Hillside Medical Center, supra* (citations omitted) (emphasis in original); *see Gore v. Northeast Airlines, Inc.,* 373 F.2d 717, 723 (2d Cir.1967) (citing *Meekin v. Brooklyn Heights R.R. Co.,* 164 N.Y. 145, 149, 58 N.E. 50, 51 (1900)).

██ Since it is undisputed that Anthony and Mildred Comparato were the sole presumptive distributees of their son John at the time of his death, *see Reed v. County of Scholharie,* 51 A.D.2d 499, 500–01, 382 N.Y.S.2d 371, 372–73 (3d Dep't 1976) (absent disqualification, parents are sole statutory distributees of intestate child regardless of existence of siblings), this court finds that each parent has a vested interest in the settlement proceeds of the wrongful death action to which a federal tax lien can attach.

██ It should be noted, however, that, precisely because the proceeds of a wrongful death action belong to the statutory distributees and not to the estate, the law does not presume equal distribution of shares. *See Hanson v. County of Erie,* 120 A.D.2d 135, 136–37, 507 N.Y.S.2d 778, 779 (4th Dep't 1986). Instead, each distributee receives damages in proportion to the injuries suffered by him or her, as determined after a hearing in Surrogate's Court. N.Y.Est.Powers & Trusts Law § 5–4.4(a)(1) (McKinney 1981 & Supp.1993); *see In re Estate of Acquafredda,* 189 A.D.2d 504, 506, 596 N.Y.S.2d 839, 840 (2d Dep't 1993). Thus, the degree to which the United States will be able to recover on its discrete liens as against Anthony Comparato and Mildred Comparato may turn on the amount the Surrogate awards each parent for their son's wrongful death. But that fact does not alter the court's conclusion that the liens do attach to the Comparatos' respective interests in this settlement fund.

### II. *State Law Renunciations*

The Comparatos submit that, even if, at the time of their son's death, they did acquire property rights to his estate and to a claim for wrongful death, these rights have now been extinguished by their formal renunciations of interest, signed April 10, 1991 and filed with the approval of the Surrogate on September 23, 1991. In these documents, both Anthony and Mildred Comparato swore "irrevocably [to] renounce wholly all of the right, title, and interest in and to any portion of the estate of JOHN COMPARATO."

██ By law, New York permits "[a]ny beneficiary of a disposition [to] renounce all or part of his interest. . . ." N.Y.Est.Powers & Trusts Law § 2–1.11(b)(1) (McKinney 1981). Moreover, since such a renunciation is deemed "retroactive to the creation of the disposition," it "has the same effect with respect to the renounced interest as though the renouncing person had predeceased the creator or the decedent. . . ." N.Y.Est.Powers & Trusts Law § 2–1.11(d) (McKinney Supp.1993). In short, a renunciation under New York law gives rise to a legal fiction designed deliberately to allow distributees to avoid the attachment of their interests in property. *See In re Estate of Scrivani,* 116 Misc.2d 204, 207–08, 455 N.Y.S.2d 505, 509 (Sup.Ct.N.Y.County 1982) ("It is settled law in New York that a distributee may freely renounce a testate or intestate disposition for

---

**3.** The law does provide for both actions to be pursued simultaneously by the estate representative. N.Y.Est.Powers & Trusts Law §§ 5–4.1(1) (McKinney Supp.1993), 11–3.3(b)(2) (McKinney 1967). This is, of course, precisely what Mr. Comparato did.

any reason, or no reason, or, indeed, the object of frustrating creditors or avoiding taxes.").

■ Assuming *arguendo* that the Comparatos' renunciations are valid under New York law, their scope and effect is less than clear.[4] For example, the renunciations speak only of the Comparatos' interest in "the estate of JOHN COMPARATO." Since the wrongful death action is not an asset of the *estate*, a question arises as to the applicability of these renunciations to that portion of the settlement proceeds.

Even if the court were to conclude that the renunciations were intended to apply to the Comparatos' interests in the wrongful death as well as the pain and suffering proceeds, the United States submits that such renunciations would not be permissible under § 2–1.11. In support, it cites *In re Estate of Summrall*, 93 Misc.2d 420, 402 N.Y.S.2d 770 (Surr.Ct.Bronx County 1978), in which the court expressed the view that wrongful death proceeds could not be renounced by a distributee (1) because § 2–1.11(a)(1), as then written, "contain[ed] a definition of 'disposition' that clearly d[id] not include a recovery for wrongful death;" and (2) because the proceeds of a. wrongful death suit constitute a property interest that vested in the distributees at the time of the decedent's death. *Id.* at 421–22, 402 N.Y.S.2d at 772. This analysis, however, may be dicta since the *Summrall* court did, in the end, permit renunciation because the only party adversely affected, the State Department of Social Services, failed to contest the renunciation and was, therefore, deemed to have consented. Moreover, defendants point the court to a more recent decision, *In re Estate of Dominguez*, 143 Misc.2d 1010, 541 N.Y.S.2d 934 (Surr.Ct.Kings County 1989), in which it was

expressly held that a spouse could renounce wrongful death proceeds. In so ruling, the court relied on a 1980 amendment to § 2–1.11, expanding the definition of "disposition" to include interests created by "operation of law," which it held included wrongful death actions. *Id.* at 1012–13, 541 N.Y.S.2d at 936–37. The United States argues that *Dominguez* is wrongly decided, because an asset, such as a wrongful death claim, which does not belong to a decedent's estate, can never be part of a "disposition."

■ In fact, this court need not resolve this question of New York law to dispose of this case, for even if § 2–1.11 renunciations can apply to a distributee's interest in wrongful death proceeds, they could not displace a federal tax lien on such proceeds nor, indeed, a federal tax lien on proceeds of a claim for pain and suffering. This is because, for purposes of enforcing a federal tax lien, state law is relevant only to the determination of whether a taxpayer has a right to certain property, not to whether he can thereafter renounce his right. Indeed, "once it has been determined that state law has created property interests sufficient for federal tax lien[s] to attach, state law 'is inoperative to prevent the attachment' of such liens." *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983) (quoting *United States v. Bess*, 357 U.S. 51, 56–57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958)); *accord United States v. National Bank of Commerce*, 472 U.S. at 722, 105 S.Ct. at 2925.

The Supreme Court specifically addressed the issue of state law renunciations of federally-taxable property interests in *United States v. Mitchell*, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971). In that case, a divorced spouse sought to renounce her in-

---

4. Under New York law, a person can lose the power to renounce an interest in property if "by passage of time and by word and conduct," he has in effect accepted his interest. *In re Wilson's Estate*, 298 N.Y. at 405, 83 N.E.2d at 855. In this case, it is unclear whether the Surrogate considered whether (1) the passage of over six years between John Comparato's death and his parents attempted renunciations, when considered in light of (2) his father's active pursuit of the malpractice claims here at issue, (3) his parents' 1989 request to have the Surrogate award

them the settlement proceeds of these claims as their son's statutory distributees, and (4) the Comparatos' March 6, 1990 offer, made through counsel to the IRS, to have their interests in these proceeds applied to their tax indebtedness, constituted an "acceptance" such as to preclude renunciation. Of course, it is not this court's task to determine whether the Comparatos' renunciations should be given any effect by the courts of New York. Its inquiry is limited to the effect of these attempted renunciations on the federal tax liens.

terest in marital assets, as permitted by Louisiana law. That state conferred on a married woman an interest in community property equivalent to that of her husband. This interest vested at the moment the property was acquired. The Supreme Court held that a renunciation under state law could not upset a federal tax lien that attached to property rights that vested before the renunciation. *Id.* at 203–04, 91 S.Ct. at 1771; *accord United States v. Rodgers,* 461 U.S. at 683, 103 S.Ct. at 2137.

Defendants seek to limit *Mitchell* to its facts, arguing that the divorced spouse in that case had actually owned and possessed her share of the community property, a fact not altered by her subsequent renunciation. *United States v. Mitchell,* 403 U.S. at 204, 91 S.Ct. at 1771. By contrast, they submit that they have never possessed any portion of the settlement proceeds here at issue. Indeed, the very purpose of New York's renunciation statute, with its fictional presumption, is to make it impossible for persons who would otherwise be distributees ever to be deemed in possession.

The argument is unpersuasive. As already noted, New York law is relevant to this court's analysis only in determining whether at the time of the jeopardy assessments the Comparatos possessed a property right to the settlement proceeds here at issue. For the reasons already stated, this court concludes that their interests in both the pain and suffering proceeds and the wrongful death proceeds had vested under New York law at the time of their son's death, such that federal tax liens attached to these assets when the assessments were filed. The fact that several years later the Comparatos sought to renounce their interests and that New York appears ready to honor these renunciations to the point of creating a legal fiction that the parents predeceased their son, is, at best, relevant "in connection with a tax or other obligation the collection of which is controlled by state law." *United States v. Mitchell,* 403 U.S. at 204, 91 S.Ct. at 1771. But such an exemption does not affect federal liens. "Federal law governs what is exempt from federal levy." *Id.* Indeed, in *Mitchell,* the Supreme Court noted that, once

a property interest exists, the only exemptions from levy are those specified in 26 U.S.C. § 6334(a) (1988 & Supp. III 1991): "This language is specific and it is clear and there is no room in it for automatic exemption of property that happens to be exempt from state levy under state law." 403 U.S. at 205, 91 S.Ct. at 1772.

Defendants nevertheless urge this court to follow the holding in *United States v. McCrackin,* 189 F.Supp. 632 (S.D.Ohio 1960), a case in which a federal district court did hold that a taxpayer's renunciation of interest in a testamentary bequest meant that he possessed no property or rights to property to which a federal tax lien could attach. A similar result was reached in an unreported case, *Stickell v. United States,* No. 77 Civ. 1045, 1978 WL 1185, at *2–4 (S.D.Ill.1978). *McCrackin,* however, predates *Mitchell,* raising questions as to its continued viability. Although *Stickell* post-dates *Mitchell,* it does not cite the Supreme Court opinion, much less seek to distinguish it. This court finds that the holding in *Mitchell* cannot be reconciled with *McCrackin* or *Stickell.*

More persuasive is the reasoning in *United States v. Solheim,* No. 89 Civ. 80, 1990 WL 283589, at *2–3 (D.Neb. Feb. 13, 1990), wherein the court, relying on *Mitchell,* held that a son's renunciation of his interest in a trust established by his father could not relate back to defeat a federal tax lien that had already attached to his property interest in the trust. The Eighth Circuit later affirmed on other grounds. *United States v. Solheim,* 953 F.2d 379, 382 (8th Cir.1992) (state court order had treated renunciation as effective on date executed, without the benefit of any relation-back theory).

Because this court finds that the Comparatos, as their son's statutory distributees, each acquired vested property rights at the time of his death to his estate, which included his pending malpractice action to recover damages for pain and suffering, and to an action for his wrongful death, it concludes that federal tax liens attached to these assets at the time jeopardy assessments were filed, which liens could not be displaced years later by the filing of state law renunciations.

III. *Federal Fraudulent Conveyance Act*

The United States contends that the Comparatos' renunciations of their interests in the settlement proceeds constitute fraudulent conveyances under the Federal Debt Collection Procedure Act of 1990 ("FDCPA"), 28 U.S.C. §§ 3001–3308 (Supp. III 1991), such as to provide a separate basis for granting judgment in the government's favor.

The court does not rely on this ground in entering judgment in favor of the United States since a number of issues relevant to the applicability of the FDCPA to this case would need further briefing before the court could rule.

### Conclusion

For the reasons stated herein, the court finds that valid federal tax liens in the total amount of $676,534.99 as to Anthony Comparato and in the total amount of $215,515.22 as to Mildred Comparato have attached to these defendants' separate interests in the settlement proceeds of malpractice actions for their son's pain and suffering before his death and for his wrongful death. The Comparatos' subsequent attempt to renounce their interests in these proceeds cannot defeat the federal government's right to enforce its liens. Summary judgment is to be entered in favor of the United States and against Anthony and Mildred Comparato in the amount of the liens, plus such additions and interest as the parties agree have further accrued. The parties are to submit to the court a proposed order specifying this total agreed upon amount within ten days.

*SO ORDERED.*