OPINION OF THE COURT
Irving A. Green, J.
In the proceeding for the judicial settlement of the final account of the administratrix herein, the guardian ad litem appointed to protect the interests of a child born out of wedlock moves the court, on behalf of his ward, for an order determining the rights of such child to inherit from the decedent herein. The guardian ad litem contends that the deceased is the natural father of the child and is entitled to a distributive share of the decedent’s estate as in intestacy, as prescribed by statute (EPTL 4-1.1). The decedent died, at age 50 years, on April 2, 1981.
The motion is opposed by the guardian ad litem appointed to protect the interests of a second out-of-wedlock child as to whom an order of filiation was made by the Family Court of Orange County, during the lifetime of the decedent, determining that the decedent was the natural father of such child.
*1079 The resolution of this issue requires a determination of whether or not EPTL 4-1.2 (subd [a], par [2], cl [C]) may be applied retroactively to pending estates. Such statute reads as follows:
“(2) A child born out of wedlock is the legitimate child of his father so that he and his issue inherit from his father and his paternal kindred if * * *
“(C) paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own.”
It is not disputed that there is absent, in this case, the other procedural modes prescribed by such statute to establish the right of an out-of-wedlock child to inherit from the putative father or his kindred. An affidavit sworn to before a notary by the decedent herein stating that he was the natural father of the subject child, without more, does not comply with the other procedural modes mandated by the statute.
The retroactivity issue respecting said statute was touched upon by my learned colleague, Surrogate Gelfand, in Matter of Rodriguez (100 Misc 2d 983) in a proceeding for letters of administration brought by the natural mother of a child born out of wedlock, as the guardian of such infant’s property. The decedent’s mother opposed the application on the ground that EPTL 4-1.2 precluded the infant from inheriting from the decedent absent compliance with the statute in effect on the date of decedent’s death, which, apparently, occurred prior to 1979, and which then provided for the inheritance by an illegitimate child from his father only if “a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.”
While the proceeding before Surrogate Gelfand was sub judice, chapter 139 of the Laws of 1979, amending EPTL 4-1.2 was enacted on May 29, 1979, to take effect immediately. This amendment to some extent liberalized the inheritance rights of nonmarital children from the paternal side of the family provided the liberalized procedural steps are complied with.
*1080 The court, in the Rodriguez case (supra), found that the procedural steps prescribed by the liberalizing amendment were not complied with; and further found that such amendment did not alter the necessity to strictly comply with the statute. Accordingly, the court, in the Rodriguez case determined that the infant of whom the petitioner was guardian was not a distributee of the decedent. The court, however, in the Rodriguez case (p 987), continued with the following observation: “In any event, it does not appear that the Legislature intended to apply, or that it could have constitutionally applied, the amendment to the statute retroactively to the property of decedents dying prior to its effective date. Such distributive interests would have already indefeasibly vested in those entitled to a distributive interest in decedent’s property on the date of decedent’s death under the statutes existing on that date.”
Following the Rodriguez case (supra), EPTL 4-1.2 (subd [a], par [2], cl [C]) was enacted by chapter 75 of the Laws of 1981, and approved on April 21, 1981, effective September 1,1981, which added such clause and reads as hereinabove set forth. The question of whether or not this newly added clause may have retroactive application to pending cases appears to be of first impression, although the reasoning in cases involving other subdivisions of EPTL 4-1.2 may be arguably analogous.
In specifically addressing the question presented upon this motion the discussion appropriately begins with the enunciated public policy of this State, prior to the death of the decedent herein, that a child born out of wedlock is the legitimate child of his father so that he and his issue inherit from his father if the conditions prescribed by the Legislature are met. That such prescribed conditions may constitutionally be mandated by the Legislature with respect to inheritance rights in intestacy is no longer open to dispute. (Matter of Lalli, 43 NY2d 65, affd 439 US 259.) Noted, however, is the different rule applicable to recoveries in actions for wrongful death in which children born out of wedlock are entitled to share free from the conditions of establishing paternity imposed upon such children with respect to rights of inheritance. (Matter of Ortiz, 60 Misc 2d 756; EPTL 5-4.5.) The constitutional rationale underlying *1081 the different rights accorded children born out of wedlock with respect to inheritance in intestacy, as contrasted with sharing the proceeds of wrongful death of the putative father, is expressed, generally, as the right of the sovereign State to make provision for the orderly settlement of estates and the dependability of titles to property passing under intestacy laws. (Trimble v Gordon, 430 US 762.)
In Matter of Lalli (supra, p 71) Judge Cooke, in a dissenting opinion in the Court of Appeals, appropriately observed that the imposition of conditions upon children born out of wedlock in order to realize their distributive rights of inheritance necessarily “exclude a substantial category of illegitimate children from inheritance.”
Judge Cooke further explained, in the Lalli case (43 NY2d, at p 71): “If this exclusion resulted from a lack of proof, it might be justifiable. But in reality not obtaining an order of filiation will often result simply from the fact that the putative father is supporting and acknowledging the children as his own. Or, it might well be and often is the product of carelessness or ignorance on the part of those who might institute a proceeding within the statutory limitation, for neither of which should a child suffer.”
The Legislature, apparently, in response to Judge Cooke’s trenchant observation and in further recognition of the continuing surge in the courts to ameliorate the hitherto invidious discrimination directed against “illegitimate” children claiming through a putative father, enacted EPTL 4-1.2 (subd [a], par [2], cl [C]). The language employed by the Legislature in such newly enacted clause (C) does not by its language expressly restrict its application prospectively only. Where such exclusive prospective application of a statute is intended by the Legislature it has not hesitated to use plain language to convey such mandate. (See, e.g., EPTL 2-1.9, subd [c]; 2-1.10, 4-1.1, subd [a], par [9]; 5-1.1; and 5-1.4, subd [b].)
The profound and familial relationship of a natural father to his child is not the creature of statute or temporal law. That relationship arises from the law of nature itself and divine providence. In the evolution of the law pressing for the extension to all children the enlightened perspective of their equality without regard to the errors or *1082 omissions of their natural parents, the Legislature exercising its sovereign power with respect to the descent and distribution of the property of the decedents, enacted EPTL 4-1.2 (subd [a], par [2]), which is a remedial statute mandating that children born out of wedlock are the legitimate children of their father and his paternal kindred. The Legislature in such enactment, prescribed the exclusive evidentiary method by which such paternity is to be deemed established. By the enactment of clause (C) of such section the Legislature broadened the evidentiary method of establishing such paternity. This court views such evidentiary conditions prescribed by the Legislature for the establishment of the relationship as only procedural in nature. Indeed, Judge Cooke, in the Lalli case (43 NY2d 65, 71, supra), refers to the evidentiary conditions of the subject statute as the “procedure mandated by our statute.” (Emphasis added.)
It is well settled that statutes which operate only as a change in procedure, and the mode of attaining or defending rights shall be construed, in the absence of words of exclusion, to apply to actions pending at the time when the same took effect. (Sackheim v Pigueron, 215 NY 62, 73; People v Qualey, 210 NY 202, 210; McKinney’s Cons Laws of NY, Book I, Statutes, § 55, p 120.)
It would run counter to the groundswell of judicial effort to ameliorate the unfair disadvantage of innocent children born out of wedlock for the court, solely by judicial fiat, to exclude from this remedial, evidentiary and procedural clause (C) of the subject statute all the children born out of wedlock who suffered the misfortune of the death of their putative father prior to its effective date. Such children, since the enactment of EPTL 4-1.2 (subd [a], par [2]), have been accorded the substantive and vested right of inheritance from their natural father. The ascertainment of the existence of such children in the course of estate administration poses no greater delay, problems or uncertainty of title than as is now present generally in the determination of estates in intestacy, or for that matter, in testate estates in which all distributees similarly are necessary parties to the probate proceeding.
*1083 Accordingly, this court finds that EPTL 4-1.2 (subd [a], par [2], cl [C]) applies to proceedings pending at the time of its effective date; and that the infant, Charles Vincent Crist, is entitled to the opportunity of establishing the paternity to him of the decedent herein pursuant to said statute.
The court directs that a hearing be held on such issue on January 17,1983, by which date pretrial practice proceedings should be completed.