OPINION OF THE COURT
Renee R. Roth, S.
The nominated executors of the estate of Jeffrey Sandler *956 seek an order directing that decedent’s alleged nonmarital son and the mother of the child submit to DNA (deoxyribonucleic acid) blood genetic marker testing. In their novel application, the decedent’s parents propose that the results of those probes be compared with the findings of DNA testing of their own blood in order to ascertain whether their son is the father of the infant.
Mr. Sandler died on June 13, 1992 survived by his parents, Harold and Dorothy Sandler (the Sandlers), and an alleged nonmarital son, Steven East Sandler. Under his will, dated May 4, 1987, testator left his entire estate equally among the Sandlers and his brother Kenneth and named his mother and brother as executors. Steven was born on July 18, 1987, approximately two months after the propounded instrument was executed. It is conceded that if Steven is, in fact, testator’s son, he is entitled, as an after-born child, to Mr. Sandler’s entire estate (EPTL 5-3.2 [a] [2]).
The infant’s mother, Regina East, as guardian of his property, contends that she will prove Steven’s status pursuant to EPTL 4-1.2 (a) (2) (C), which provides that a nonmarital child is the legitimate child of his father if "paternity has been established by clear and convincing evidence and the father * * * has openly and notoriously acknowledged the child as his own”.
Along with her own testimony of her intimate relationship with the decedent, Ms. East offers an affidavit in which Mr. Sandler acknowledged his paternity of Steven in order to be identified on Steven’s birth certificate as his father. It is noted, however, that such acknowledgment, standing alone, would be insufficient, under the law, to establish Steven’s status (EPTL 4-1.2 [a] [2] [B]; see, Matter of Crist, 116 Misc 2d 1078; Matter of Rodriguez, 100 Misc 2d 983; Matter of Belton, 70 Misc 2d 814).
Contending that Ms. East’s proof is insufficient to establish paternity and that they are entitled to an opportunity to rebut whatever proof is offered, the Sandlers propose that DNA testing be performed on them, the infant and his mother. Only with such a blood genetic marker test, they claim, can the issue of Steven’s paternity be conclusively determined.
The test they propose, restriction fragment length polymorphism (RFLP), was recently held to be reliable by the Court of Appeals in a case which involved the conviction of a defen *957 dant based upon the DNA analysis of bloodstains found on his clothing (People v Wesley, 83 NY2d 417).
In support of their contention that DNA testing of paternal grandparents can determine the paternity of a child, the executors offer the affidavit of Dr. Michael L. Baird, vice-president of Laboratory Operations at Lifecodes Corporation (Lifecodes). Dr. Baird states that such testing "can reconstruct the obligatory DNA components that the deceased alleged father contained * * * By testing the mother and child by RFLP DNA analysis, the portion of the child’s DNA that originated from the mother can be established (maternal allele). The portion of the child’s DNA that did not originate from the mother had to come from the biological father (paternal allele). If the child’s paternal allele is not present in the parents of the deceased alleged father (putative grandparents of the child), then the tested putative grandparents are not the biological grandparents of the child and the alleged father (son of the putative grandparents) is not the biological father of the child.”
Thus, according to Dr. Baird, the DNA test could reliably exclude paternity. If not excluded, then a paternity index (the genetic odds of paternity) "is calculated as the chance that the putative grandparent contributed the paternal allele (1 in 4 or 0.25) divided by the chance that a random man of the same ethnic group contributed the paternal allele”. Finally, Dr. Baird observes that similar testing has been performed by Lifecodes in 25 other instances and that in one such instance the test results were presented at a hearing in Pennsylvania.
The guardian ad litem appointed by the court to represent Steven opposes the application on the ground that the test is too invasive when balanced against the novelty of the proposed procedure, i.e., testing putative grandparents rather than an alleged father. Furthermore, he maintains that such testing is not authorized by the governing statute, EPTL 4-1.2.
Initially, it is noted that although the use of DNA testing is still relatively new in the courtroom and potentially revolutionary, it nonetheless involves at the outset drawing only the usual blood sample used in all paternity cases (Family Ct Act § 532). It is further noted that blood is routinely taken from infants much younger than this seven-year-old child.
In a recent decision (Matter of Janis, 157 Misc 2d 999), this court did not allow the exhumation of a putative father’s body for the purpose of DNA testing holding that an application to *958 establish paternity under clause (D) of EPTL 4-1.2 (a) (2) may be made only where a blood genetic marker test had been administered to the father during his lifetime. But in this case the blood tests are to be performed on living relatives of the alleged father. Unlike Janis, there appears to be nothing in EPTL 4-1.2 or in its legislative history which specifically prohibits such a novel method of establishing paternity. Accordingly, inasmuch as it has scientific validity, DNA comparison of the blood of the putative paternal grandparents with that of the infant may be performed in an effort to provide the "clear and convincing evidence” that is required to establish paternity under clause (C) of EPTL 4-1.2 (a) (2). Finally, it is observed that all the persons who are to be tested are parties in this proceeding.
Based upon the foregoing, the application is granted. Subject to the further order of the court, the Sandlers shall pay for the cost of the tests from their own resources.