OPINION OF THE COURT
Amy J. Fricano, J.
The decedent died in an automobile accident on January 25, 1995. Andrea Danielle Schillaci, the purported nonmarital child of the decedent, was born on May 16, 1995 to the petitioner, Christine Schillaci. Andrea Danielle Schillaci (hereinafter referred to as Andrea) was born after a full-term pregnancy. The petitioner, on behalf of her daughter, commenced this action after the decedent’s death to establish the decedent’s paternity of her daughter. If Andrea is determined to be the decedent’s daughter, she would be his sole intestate distributee. If Andrea is not determined to be the decedent’s daughter, then his two surviving parents would be his intestate distributees. The decedent’s mother, Jeanne M. Wilkins, is the administratrix of the decedent’s estate and the respondent in this proceeding. The issue before the court is whether or not the petitioner has met the burden of proof under EPTL 4-1.2 to establish Andrea as the sole intestate distributee of the decedent’s estate.
Paternity was not established during the decedent’s lifetime, nor was any paternity action commenced while he was alive. Accordingly, petitioner must establish paternity pursuant to either EPTL 4-1.2 (a) (2) (C) or (D) for Andrea to inherit from the decedent. EPTL 4-1.2 (a) (2) (C) states a nonmarital child may inherit from his father and his paternal kindred if: “paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own.”
Petitioner has failed to present any credible evidence that the second prong of this standard has been met. Petitioner, other than by her own testimony, offered absolutely no credible evidence that decedent “openly and notoriously acknowledged the child as his own.” The open and notorious acknowledgments must have been made by decedent, and petitioner offered no credible evidence that decedent made any such acknowledgments prior to his death. Petitioner’s own testimony in this regard is suspect and self-serving, and fails as a matter of law to meet the second prong of EPTL 4-1.2 (a) (2) (C). Although the court allowed the testimony, without objection *220 under the Dead Man’s Statute found in CPLR 4519, the court gives very little weight to petitioner’s testimony. Petitioner’s cause of action under EPTL 4-1.2 (a) (2) (C) is dismissed.
Turning next to the requirements of EPTL 4-1.2 (a) (2) (D), that statute provides: “a blood genetic marker test had been administered to the father which together with other evidence establishes paternity by clear and convincing evidence.”
Once again, petitioner has a two-prong burden of proof. The blood genetic marker test must have been administered to the decedent prior to his death to be admissible (Matter of Sekanic, 229 AD2d 76 [3d Dept 1997]; Matter of Janis, 210 AD2d 101; Estate of DeLuca, NYLJ, Jan. 15, 1998, at 37, col 2 [Sur Ct, Suffolk County]), the results must be compelling, and other evidence must exist which when combined with the blood genetic marker test establishes paternity by clear and convincing evidence. This is a strict standard which the court must not lightly apply.
Petitioner offered into evidence petitioner’s exhibit No. 2, without objection, and petitioner’s exhibit No. 5, with objection, which are HLA-A&B test results comparing the decedent, petitioner, and Andrea.[1] The decedent’s HLA-A&B results were based upon the results of an earlier paternity blood test taken by decedent, during his lifetime, on October 19, 1994, in which he was conclusively found not to be the father of a different child, unrelated to any of the parties in the current proceeding. Decedent’s results from this earlier test were compared with current blood samples taken from petitioner and Andrea on the basis of this court’s order of May 27, 1997. This May 27, 1997 order also authorized the comparison of the blood of petitioner, Andrea, and decedent’s two parents. This second blood genetic marker test comparison was entered into evidence as petitioner’s exhibit No. 4 over the objection of respondent. It should be noted that the court issued the May 27, 1997 *221 order on the consent of all interested parties. The court finds that the use of preexisting blood genetic marker tests and/or blood samples meets the statutory requirement of the first prong of EPTL 4-1.2 (a) (2) (D), which requires blood genetic marker testing on the putative father prior to his death. In this case a preexisting blood genetic marker test on decedent existed; however, his blood samples were apparently no longer available.
Exhibit No. 5 established the probability of paternity as 98.35%. After exhibit No. 5 was admitted into evidence petitioner moved, pursuant to the 95% probability threshold of CPLR 4518 (d), to shift the burden of proof on the first prong of EPTL 4-1.2 (a) (2) (D) to the respondent. CPLR 4518 (d) states, in part, “If such record or report relating to the administration and analysis of a genetic marker test or DNA test or tests administered pursuant to sections four hundred eighteen and five hundred thirty-two of the family court act or section one hundred eleven-K of the social services law indicates at least a ninety-five percent probability of paternity, the admission of such record or report shall create a rebuttable presumption of paternity, and shall, if unrebutted, establish the paternity of and liability for the support of a child pursuant to articles four and five, of the family court act.”
Although not specifically applicable to either the Surrogate’s Court Procedure Act, or the EPTL, the court held that CPLR 4518 (d) was applicable to the current proceeding pursuant to SCPA 102, which states, “The CPLR and other laws applicable to practice and procedure apply in the surrogate’s court except where other procedure is provided by this act.” Accordingly, the court applied CPLR 4518 (d) to effectively shift the burden of proof on the first prong of EPTL 4-1.2 (a) (2) (D) to the respondent. The petitioner retained the burden of proof under the second prong of EPTL 4-1.2 (a) (2) (D).
Respondent challenged exhibit No. 5 by arguing that the test itself was inconclusive. The exhibit contained the language: “This report is being furnished at the request of the account and does not meet Micro Diagnostics or the American Association of Blood Banks criteria for an inclusionary report as only one system was tested.”
Upon further testimony, it was determined that the industry standard for inclusion was a 99% test result, and the one system analysis yielded only a 98.35% test result. Respondent then argued that the presumption of CPLR 4518 (d) was rebutted by the fact that the applicable standards of both the lab *222 that conducted the test and the industry as a whole is a 99% inclusionary result.[2]
Petitioner argued that the 95% probability rate is all that CPLR 4518 (d) requires and that a more substantial rebuttal is necessary than that offered. Petitioner overlooks the fact that CPLR 4518 (d) creates only a rebuttable presumption that is contingent upon all of the evidence before the court. Further, as CPLR 4518 (d) was written to deal primarily with the Family Court Act and not the EPTL, it is not the exclusive factor to be considered in the current proceeding. The court’s May 27, 1997 order in this proceeding can be properly considered in the resolution of this matter, as can both the acceptable industry standards and the testing lab’s standards.
In reviewing exhibit No. 5, the decedent’s comparison, with exhibit No. 4, the comparison with decedent’s parents, the court is also concerned with how a combined paternity index of 321 to 1 with respect to the decedent’s parents results in a probability of paternity of 99.69% in the latter exhibit, and a combined paternity index of 60 to 1 results in a probability of paternity of 98.35% in the former exhibit. Once again, the limitation and qualification set forth by the petitioner’s expert’s lab in exhibit No. 5 is of concern to the court.
This concern is lessened by virtue of exhibit No. 4, the comparison with decedent’s parents, which petitioner has offered as the additional evidence necessary to meet the second prong of EPTL 4-1.2 (a) (2) (D). This report covers a variety of systems and yields a probability of paternity of 99.69%. Utilizing the decision of Surrogate Roth in Matter of Sandler (160 Misc 2d 955 [Sur Ct, NY County 1994]), petitioner contends that these test results, combined with the petitioner’s testimony, meet the clear and convincing prong of EPTL 4-1.2 (a) (2) (D). Matter of Sandler (supra) stands for the proposition that although posthumous testing of a decedent is not authorized for purposes of the first prong under EPTL 4-1.2 (a) (2) (D), posthumous testing of decedent’s collateral living relatives is, for purposes of the second prong of EPTL 4-1.2 (a) (2) (D). As decedent’s parents voluntarily consented to participate in *223 the blood genetic marker tests, the court does not have to address the issue of whether they could have been required to submit to such tests. Based upon their consent, regardless of the reason therefor the court may properly consider it as evidence before it. The court finds that these test results, based on their multiple system analysis, meet the second prong of EPTL 4-1.2 (a) (2) (D).
Given the court’s uncertainty as to the validity of the initial test as set forth in exhibit No. 5, while being cognizant of the degree of probability set forth in exhibit No. 4, and in the interest of justice being served, this matter is remanded for a further hearing solely on the issue of the comparison of the decedent’s previous blood genetic marker test results to the current blood samples of the petitioner and Andrea. The petitioner, at her expense, is directed to obtain a complete analysis on all of the systems the decedent was originally tested for, as originally directed by the court’s May 27,1997 order. A hearing will thereafter be held on the validity of this complete analysis and comparison. The revised report will be submitted to this court within 180 days from the date of this order. The matter will thereafter be scheduled for a further hearing on this limited issue. If an identical systems comparison is not filed within said 180-day period, judgment shall be entered for the respondent as it is this court’s determination that absent such a complete comparison the petitioner will have failed to meet the required burden under the first prong of EPTL 4-1.2 (a) (2) (D).

. Exhibit Nos. 2 and 5 are essentially the same document with the exception that exhibit No. 2 contains a typographical error which lists the alleged father as Daniel L. Wilkins instead of the decedent Andrew Wilkins. The expert’s testimony was that exhibit No. 2 was an original blood genetic marker test report prepared for submission at trial that merely contained a typo. Exhibit No. 5, which was a photocopy of an earlier original report, was the same report without this typographical error in names. The expert further testified that the error was inadvertently made in the documents’ regeneration. Respondent made no objection to exhibit No. 2 because it did not list decedent’s name as the alleged father. The respondent objected to exhibit No. 5 on various grounds which the court overruled and allowed exhibit No. 5 into evidence.

. It must be noted that the court’s May 27, 1997 order, which authorized the comparison of the decedent’s previous blood analysis report, was an analysis of several such systems for the decedent, and that despite this, the new report provided a comparison of only one of the previously tested systems. As the decedent’s blood sample was taken within approximately two months of Andrea’s conception, given a full-term pregnancy, it is unclear to the court why the comparison in issue could not and did not compare all of the originally established system bench marks for the decedent.