[818 NYS2d 403]

In the Matter of the Estate of MILDRED E. UHL, Deceased. ACEA
M. MOSEY, as Public Administrator, Respondent; MARIAN
(DECKER) RICHARDS et al., Respondents, and SALLY HIM-
MELSBACH et al., Appellants. (Appeal No. 2.)

Fourth Department, July 7, 2006

**APPEARANCES OF COUNSEL**

*Peter J. Brevorka*, Buffalo, for appellants.

**OPINION OF THE COURT**

GREEN, J.

Mildred E. Uhl (decedent) died on January 19, 2003 at the age of 94 without a will. Her husband and parents predeceased her, and she had no children or siblings. In this proceeding for the judicial settlement of the accounts of the administrator of decedent's estate, petitioner alleges that each of decedent's six surviving first cousins is interested in the estate. Four of those cousins, respondents Marian (Decker) Richards, William E. Decker, Phyllis Jean (Decker) Anderson and George Craig Decker, Jr. (paternal first cousins), are descendants of Benjamin J. Decker, decedent's paternal grandfather. The remaining two, respondents Sally Himmelsbach and Lora Elkins (maternal first cousins), are descendants of Jacob Seader, decedent's maternal grandfather. Following a kinship hearing, Surrogate's Court determined that only the paternal first cousins are entitled to inherit from decedent pursuant to EPTL 4-1.1 (a) (6) because the maternal first cousins are nonmarital children of their father, Albert H. Seader, and were not entitled to inherit from his kindred under the statute in effect at the time of his death in 1953. We conclude that the Surrogate erred in so determining, and we conclude instead that the maternal first cousins are entitled to inherit from decedent pursuant to EPTL 4-1.2 (a) (2) (C), which was in effect at the time of decedent's death in 2003.

The evidence presented at the kinship hearing established that the four paternal first cousins are the only potential distributees on the paternal side, and their right to inherit from decedent is not at issue on this appeal. The evidence also established that the maternal first cousins are in fact the children of Albert Seader, decedent's uncle, and Elizabeth Archer. Despite the efforts of the maternal first cousins and a professional genealogist to locate a marriage certificate for Albert and Elizabeth, no certificate was located. In addition, on the birth certificate of Sally Himmelsbach, the elder maternal first cousin, the space provided for the father's name is blank and Elizabeth later admitted that she and Albert were not married when Sally

was born. There was no direct proof that Elizabeth and Albert married before the birth of Lora Elkins, the younger maternal first cousin. Nevertheless, the testimony of Lora and the documentary evidence established that Albert acknowledged and treated both maternal first cousins as his daughters.

Based upon the evidence presented at the kinship hearing, the Surrogate found that the maternal first cousins are the nonmarital children of Albert. They are not entitled to inherit from decedent through their father, the Surrogate concluded, because their inheritance rights were fixed as of the date of Albert's death in 1953. Pursuant to Decedent Estate Law § 83, in effect at that time, nonmarital children could not take in intestacy from their father or paternal kindred. Rather, nonmarital children were entitled to inherit only from their mother, and even then only if the mother had no marital children. They were not entitled at that time to inherit from their mother's kindred, and in no case could nonmarital children inherit from their father or his kindred (see Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 4-1.2, at 657-658). Thus, at the time of their father's death, the maternal first cousins would not have been considered the children of Albert for purposes of inheritance from him or his kindred under any circumstances.

The decades following Albert's death have been marked by a gradual liberalization of the law governing the rights of nonmarital children to inherit. The Legislature's "successive efforts at liberalizing the rights of nonmarital children to inherit from their fathers" were undertaken with a view toward eliminating the disparity between marital and nonmarital children (Matter of Smith, 118 Misc 2d 165, 169 [1983]; see Matter of Crist, 116 Misc 2d 1078, 1082 [1982]; Matter of Kenny, 114 Misc 2d 203, 213 [1982]). In Crist, Surrogate's Court wrote:

> "In the evolution of the law pressing for the extension to all children the enlightened perspective of their equality without regard to the errors or omissions of their [biological] parents, the Legislature exercising its sovereign power with respect to the descent and distribution of the property of the decedents, enacted EPTL 4-1.2 [(a) (2)], which is a remedial statute mandating that children born out of wedlock are the legitimate children of their father and his paternal kindred" (116 Misc 2d at 1081-1082).

The Legislature gradually effectuated that remedial purpose by expanding the methods by which nonmarital children may

establish paternity. In 1965 the Legislature enacted Decedent Estate Law § 83-a, which is now EPTL 4-1.2 (see *Matter of Wilkins*, 180 Misc 2d 568, 572 [1999]), thereby providing for the first time that a nonmarital child would be treated as the legitimate child of his or her father if there was an order of filiation determining paternity in a proceeding instituted during the mother's pregnancy or within two years of the child's birth (see *Matter of Smith*, 114 Misc 2d 346, 347-348). The inheritance rights of nonmarital children were further extended in 1979 with the elimination of the two-year period in which to institute a paternity proceeding and the addition of a second method of demonstrating the right to be treated as a legitimate child of the father, i.e., the filing of an acknowledgment of paternity (L 1979, ch 139, § 1; see *Smith*, 114 Misc 2d at 348-349; *Kenny*, 114 Misc 2d at 217).

The maternal first cousins seek the benefit of the third liberalizing amendment to the statute governing the inheritance rights of nonmarital children, enacted in 1981 and codified as EPTL 4-1.2 (a) (2) (C). That section provides in relevant part that

"[a] non-marital child is the legitimate child of his [or her] father so that [the child] and his [or her] issue inherit from [the] father and his paternal kindred if . . .

"paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own."

At the kinship hearing, the paternity of Albert was established by clear and convincing evidence, and it is undisputed that he "openly and notoriously acknowledged" the maternal first cousins as his own (*id.*). The issue before us, however, is not whether the maternal first cousins satisfy the evidentiary requirements of clause (C) of the statute. Rather, the issue is whether the statute applies at all. In determining whether the statute applies, the dispositive date is the date of decedent's death in 2003, not the date of Albert's death in 1953 (see *Estate of Guida*, NYLJ, Nov. 1, 1991, at 27, col 5). We conclude that, because the statute was in effect on the date of decedent's death, the maternal first cousins are entitled to inherit from decedent pursuant to the terms of the statute.

In reaching a contrary conclusion, the Surrogate relied upon *Matter of Malavase* (133 AD2d 759 [1987]), a case in which the

Second Department rejected the contention of a nonmarital son that the 1981 amendment adding clause (C) should be applied retroactively, allowing the son to share in the estate of his father, who died in 1979 (*id.* at 760-761; *see Guarino v Lesser*, 168 AD2d 424, 425 [1990]; *Smith*, 118 Misc 2d at 171-172; *Smith*, 114 Misc 2d at 350; *Estate of McPhatter*, NYLJ, Dec. 1, 1997, at 27, col 6). The Court in *Malavase* relied upon the established principle that "the rights of individuals who may have an interest in a decedent's estate are fixed as of the date of death. Thus, the Legislature is presumed not to have intended to deprive those individuals of their rights through the retroactive operation of a statute passed after the date of death" (133 AD2d at 760).

In our view, *Malavase* is distinguishable from the instant case because, here, the maternal first cousins are seeking to inherit from their cousin, who died in 2003, not their father, who died in 1953. *Malavase* rests on the principle that the rights of persons having an interest in an estate are fixed as of the date of death, and statutes "governing decedents' estates are generally not given a retrospective operation" (*Matter of Best*, 66 NY2d 151, 157 [1985]; *see Smith*, 118 Misc 2d at 170-172). In the instant case, the rights of both sets of cousins were fixed as of the date of *decedent's* death, not at some earlier point in time. Neither the paternal first cousins nor the maternal first cousins had any rights in decedent's estate when Albert died in 1953. Thus, allowing the maternal first cousins to share in decedent's estate does not take away any vested rights of the paternal first cousins or offend the due process principles underlying *Malavase*. Nor does extending EPTL 4-1.2 (a) (2) (C) to these circumstances entail any retroactive application of the statute, which has been in effect since September 1, 1981, more than 21 years prior to decedent's death.

Finally, in view of the remedial policy of EPTL 4-1.2 (a) (2), we do not concern ourselves with the statement in *Malavase* that "an illegitimate child may not inherit from or *through* a parent by virtue of a statute passed after the death of the parent" (133 AD2d at 761 [emphasis added and internal quotation marks omitted]). That statement is a quotation from an outdated treatise (10 Am Jur 2d, Bastards § 153) that is then quoted in a Minnesota case (*In re Breole's Estate*, 298 Minn 116, 120, 212 NW2d 894, 896 [1973]), and does not correspond to the express language or underlying purpose of EPTL 4-1.2 (a) (2).

Accordingly, we conclude that the order should be modified by providing that the maternal first cousins are jointly entitled to

50% of decedent's net distributable estate and that the paternal first cousins are jointly entitled to 50% of decedent's net distributable estate (*see* EPTL 4-1.1 [a] [6]).

PIGOTT, JR., P.J., HURLBUTT, KEHOE and SMITH JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified on the law by providing that respondents Sally Himmelsbach and Lora Elkins are jointly entitled to 50% of the net distributable estate of Mildred E. Uhl and that respondents Marian (Decker) Richards, William E. Decker, Phyllis Jean (Decker) Anderson and George Craig Decker, Jr. are jointly entitled to 50% of the net distributable estate of Mildred E. Uhl and as modified the order is affirmed without costs.