OPINION OF THE COURT
Lee L. Holzman, J.
In this proceeding to judicially settle the account of the Public Administrator, the objectants, three alleged maternal first cousins, claim to be the decedent’s only distributees. A kinship hearing was held before the court at which the guardian ad litem for unknown heirs participated. At the hearing, the objectants agreed that, subject to the terms of a stipulation stated on the record, they would not make any claim with respect to the paternal half of the distributable estate prior to March 13, 2012, 10 years from the date of the decedent’s death.
The proof adduced establishes that the decedent died on March 13, 2002 at the age of 89 years. She married once, but had no children. Her parents both predeceased her and she had one brother and one sister, both of whom also predeceased her without issue. Given the objectants’ stipulation, no further evidence was presented regarding the decedent’s paternal relatives.
The decedent’s mother was the nonmarital child of the decedent’s grandfather. The decedent’s maternal grandmother predeceased the decedent without other issue. However, the grandfather, with his wife, Mary J. Hayes, had nine other children, the decedent’s maternal aunts and uncles, all of whom predeceased the decedent. Only three of the maternal aunts and uncles had children. Aunt Helen Williams Denkins had two children, one of whom, Theodore Denkins, survived the decedent and is an objectant herein. Aunt Irene Williams Weston Claiborne had 10 children, 2 of whom, Mildred Weston and Irene Weston Ray, survived the decedent and are objectants herein. Uncle John Williams, Jr., had one son John McPherson Williams, for whom no documentary evidence was presented regarding when or where this first cousin died. Although the family believed that two of the decedent’s aunts had arranged his funeral in Philadelphia “years and years ago,” the professional genealogist testified that he conducted research regarding this cousin in both South Carolina and Philadelphia without success.
With respect to the persons for whom documentation could not be found, the objectants requested that the ameliorative provisions of SCPA 2225 be utilized to determine that there are *336 no distributees other than those stated in the record. Under all of the criteria used to determine whether a diligent search under SCPA 2225 has been made, including the size of the estate, the amount of time which has elapsed since any other possible distributees were heard from, and the lack of any leads as to their whereabouts (Matter of Schrake, 129 Misc 2d 671 [1985]), it is determined that a sufficiently diligent and exhaustive search has been completed to satisfy the requirements of SCPA 2225.
The guardian ad litem for unknown heirs questions whether the objectants, descendants of the decedent’s maternal grandfather, who was not married to the decedent’s grandmother, are eligible to inherit under EPTL 4-1.2, the statute governing inheritance by or from nonmarital children. He also questioned whether the court should apply the law in effect at the time the grandfather died (Jan. 1912), or the law in effect at the time of the decedent’s death. The question regarding which date governs the statute to be applied is answered in Matter of Uhl (33 AD3d 181 [2006]). In that case, two alleged cousins were hot able to prove that they were the marital children of their father, the decedent’s maternal uncle. They therefore sought to apply the provisions of EPTL 4-1.2 (a) (2) in effect at the time of the decedent’s death in order to establish their claim to the maternal share of the estate. The trial court held that, since the alleged maternal cousins could not receive an intestate share from their father’s estate under the statute in effect at the time of their father’s death, they could not inherit from the decedent through their father. The Appellate Division, Fourth Department, reversed, holding that the law in effect on the date of the decedent’s death had to be applied because “the maternal first cousins are seeking to inherit from their cousin, who died in 2003, not their father, who died in 1953” and “the rights of both sets of cousins were fixed as of the date of decedent’s death, not at some earlier point in time” (33 AD3d at 185).
Inasmuch as EPTL 4-1.2 has not been amended since the date of decedent’s death, this case is governed by its provisions. Although the statute might be more clearly stated, it appears that subdivision (a) (2) of EPTL 4-1.2 is applicable to those cases where an alleged distributee is a nonmarital child or the issue of a marital child, while subdivision (b) is applicable where an alleged distributee seeks to inherit from a decedent who is a nonmarital child or the issue of a nonmarital child. In any event, in this case, it makes no difference which subdivision controls because, under either subdivision, the objectants may inherit *337 through the decedent’s maternal grandfather only if the paternity of the decedent’s mother “has been established by clear and convincing evidence” and the maternal grandfather “openly and notoriously acknowledged the child as his own” (EPTL 4-1.2 [a] [2] [C]; [b]).
In requiring clear and convincing evidence of paternity and an open and notorious acknowledgment, EPTL 4-1.2 clearly creates a two-prong test. However, frequently the only issue that is discussed by the courts in kinship cases is whether there was an open and notorious acknowledgment by the father. Perhaps the reason for this is that in cases in which paternity cannot be proved by a scientific test and both parents of the nonmarital child are deceased, it is reasonable for the courts to find that the paternity requirement has been established where the mother had identified the father, the putative father and other members of his family openly and notoriously acknowledged their relationship to the child and no one else has claimed to be the father. Thus, under these circumstances, an open and notorious acknowledgment by all family members is in effect also used as proof of paternity.
Here, the available census records indicate that the objectant’s mother was not part of the household with her father’s nine marital children. The only direct proof offered to establish that the decedent’s maternal grandfather ever openly and notoriously acknowledged that the decedent’s mother was his child was from one of the objectants who essentially testified that all family members recognized the decedent’s mother as a family member. Assuming, arguendo, that this testimony is admissible under a “pedigree exception to [CPLR 4519]” (Matter of Berlin, 91 Misc 2d 666, 667 [1977]), this testimony standing alone would be insufficient to fulfill the open and notorious requirement. However, the proof adduced also established that, long before the decedent’s death, when there was no incentive to claim a relationship, the decedent’s mother and her nine siblings recognized their relationship to one another. On the death certificate of one of her sisters, the decedent’s mother is the informant and identified as a sister. A disinterested witness testified that while she and one of the objectants visited with the decedent in the Bronx, the witness was told that they were cousins. As the marital and nonmarital issue of the decedent’s maternal grandfather openly proclaimed their relationship to one another for many years prior to the decedent’s death, it may be inferred that the maternal grandfather himself openly *338 and notoriously acknowledged his paternity of the decedent’s mother to his marital children. Moreover, there was no evidence that he ever denied paternity or that another person claimed to be the father of the decedent’s mother. Considering all of the proof presented herein, including all of the circumstantial evidence and the time that has elapsed since the maternal grandfather’s death, the court finds that the two-prong test of EPTL 4-1.2 has been fulfilled in this case.
Accordingly, the proof establishes that with respect to the maternal side of the family the decedent was survived by three first cousins, Mildred Weston, Irene Weston Ray and Theodore Denkins, each of whom is entitled to a one-third share of the maternal one half of the estate, or one sixth of the net distributable estate.
The Public Administrator shall file an affidavit bringing the account up to date and settle a decree incorporating the terms of the parties’ stipulation.